**In re ESTATE OF Patricia D. KING, Deceased.**

No. C7–02–2112.

Court of Appeals of Minnesota.

Aug. 26, 2003.

David R. Marshall, Crystal M. Ovsak, Fredrikson & Byron, P.A., Minneapolis, for appellant Robert Glaisyer.

Scott D. Eller, Robert D. Maher, Best & Flanagan, L.L.P., Minneapolis, for respondent Joseph Glaisyer.

Stanley M. Rein, Elizabeth S. Wright, Dorsey & Whitney, L.L.P., Minneapolis, for respondents U.S. Bank and William King.

Considered and decided by STONEBURNER, Presiding Judge, HARTEN, Judge, and MINGE, Judge.

## OPINION

MINGE, Judge.

In a dispute over valuation of a minority block of stock in a closely held corporation for purposes of determining equal distribution of assets pursuant to a will and trust, the district court upheld the trustees' determination that they were required to use the fair market value approach, which discounted for lack of control and lack of marketability. Appellant claims that since the block of stock, together with the other stock the respondent already owns, will give respondent control of the closely held corporation, the district court erred by

approving this fair market valuation approach. Appellant argues that the district court should have directed the trustees to use the investment value approach, which would recognize the value to the respondent of the control of the corporation that decedent's minority block of stock would give. Because the fair market value approach is an acceptable method for determining the value of a minority block of stock, because the trustees prefer that method, and because the trustees have discretion to select a valuation approach, we affirm.

## FACTS

Patricia D. King died in 1996; respondents William A. King and U.S. Bank National Association were appointed her personal representatives. By the terms of her will, and following a disclaimer by her sister, the residue of her estate was devised to her personal representatives as trustees for the benefit of, and for distribution in equal parts to, her two nephews: respondent Joseph Glaisyer and his brother appellant Robert Glaisyer. A significant part of that residue was a minority block of stock in Capitol Securities Corporation (CSC).

CSC is a closely held corporation. When King died, she owned 726 shares of CSC stock. Virtually all remaining shares were held by appellant Robert and respondent Joseph Glaisyer. Joseph owned 645 shares, and Robert owned 468 shares. Joseph is president and CEO of CSC. The trust provides:

> [T]o the extent possible, all shares of stock of Capitol Securities Corp. included in the residue of the trust shall be allocated to the share of the residue of the trust to be distributed to my nephew, Joseph L. Glaisyer * * *.

The trust grants the trustees the authority to "determine values" but does not specify a method.

Appraisers determined that, based on the net value of the assets of CSC, its stock was worth $3,880 per share. The parties do not dispute this value. The personal representatives then determined the fair market value of the shares held by King at her death by applying a 45% discount because the shares represent a minority interest and are not readily marketable. The revised plan of distribution uses the resulting fair market value of $2,134 per share. The same value and valuation method had been used in valuing the shares for estate tax purposes.

Robert objected to the use of the fair market value approach in valuing King's CSC stock. He claimed that receipt of the King shares would give Joseph not a minority block of stock, but control of CSC, that control carried with it substantial value, and that as a result, use of the fair market approach would defeat King's intent that assets be equally divided between him and Joseph. Robert advocated use of the investment value method of determining the value of the King block of stock. This investment approach would value the CSC stock according to its value to the recipient. Robert argued that the value to Joseph of that stock should be based on the net value of CSC's assets, which was, at a minimum, $3,880 per share.

At trial, the drafter of King's trust testified that there were no discussions with King regarding the method of valuation. The attorney for King's trustees and personal representatives testified that the fair market value method was the proper appraisal method for trustees to use when determining the distribution. It assumes there is a willing buyer and a willing seller for the block of stock. It looks at the value of what the transferor has, not the

benefit that the transferee receives. Robert's appraiser testified that determining the value of shares under the investment value method, which determines value based on the benefit to Joseph as transferee, would be more appropriate under the circumstances.

The district court found that King's direction that CSC shares be allocated to Joseph's share made clear her intent that Joseph would have control of CSC. The court also found that, "[b]eyond the obvious intent that the portions be equal, there is no evidence of any intent concerning valuation methodology, and no facts from which an inference of Decedent's intent concerning such methodology can be drawn."

The court went on to find that the use of the fair market value method, including marketability and minority discounts, is commonly accepted in the business and legal world and is used for federal estate and gift tax purposes; that it was used in the estate's tax returns; that although the investment value method is within the range of reasonable valuation methods that could be chosen by the personal representatives, it is not commonly used; that the co-personal representatives acted reasonably and impartially; that the issue is whether the method chosen by the co-personal representatives is reasonable and impartial; and that in this case, that choice was both reasonable and impartial. Based on these findings, the district court approved the distribution. This appeal followed.

## ISSUE

Did the district court err in approving the trustees' use of the fair market value approach to valuing the CSC stock in decedent's estate?

## ANALYSIS

"[S]o long as the trustees act in good faith, from proper motives, and within the bounds of reasonable judgment," we will not interfere with their decisions. *United States v. O'Shaughnessy*, 517 N.W.2d 574, 577 (Minn.1994). This court will not substitute its discretion for the discretion of the trustee save when it is necessary to prevent an abuse of discretion such as where the trustee is given discretion in distributing income and corpus. *In re Campbell's Trusts*, 258 N.W.2d 856 (Minn.1977); *see also* Restatement (Second) of Trusts § 187 cmt. a (1959) (discussing the discretion afforded trustees).

Appellate courts review a district court's findings of fact concerning wills and trusts under a clearly erroneous standard and review conclusions of law de novo. *In re Trust Created Under Agreement with Lane*, 660 N.W.2d 421, 425–26 (Minn.App.2003). When reviewing a district court's findings of fact, this court views the record in the light most favorable to the judgment of the district court. *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn.1999). "Findings of fact are clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999) (quotation omitted).

"The trustee may distribute property and money in divided or undivided interests and adjust resulting differences in valuation." Minn.Stat. § 501B.81, subd. 26 (2002). "[I]mpartiality [toward beneficiaries] governs exercise of trustees' powers * * *." *In re Great N. Iron Ore Props.*, 263 N.W.2d 610, 621 (Minn.1978). And the method used by trustees to determine the value of trust assets must be reasonable. *See* Minn.Stat. § 524.3–906(a)(3) (2002) (stating that the personal representative may ascertain value of an

estate's assets for distribution "in any reasonable way"); *O'Shaughnessy*, 517 N.W.2d 574, 577 (stating that trustees' acts must be within the bounds of reasonable judgment).[1]

 "The citadel of will and trust construction, before which all other rules of construction must bow, is the elusive 'intent of the trustor or testator.'" *In re Trusts Created by Agreement with Harrington*, 311 Minn. 403, 405, 250 N.W.2d 163, 165 (1977) (citation omitted). The primary concern of the court is to give effect to the intent of the testator as expressed in the plain language of the will. *In re Shields*, 552 N.W.2d 581, 582 (Minn. App.1996), *review denied* (Minn. Oct. 29, 1996). A testator's intention must "be ascertained from the language of his will, which may have a meaning controlled by surrounding circumstances or context." *In re Holden's Trust*, 207 Minn. 211, 215, 291 N.W. 104, 106 (1940).

 Appellant argues that the district court's finding that the trustees' use of the fair market value method to assess CSC stock was within the trustee's discretion is clearly erroneous because the method of valuation was unreasonable, partial, and contrary to the intent of Patricia King.[2] We disagree.

Appellant has failed to demonstrate why the district court's findings are clearly er-

roneous. Instead, appellant seems to argue that the investment value method would be a better method of determining the value of the stock. But it is not the province of this court to determine which method of valuation is the *best;* we determine whether the district court's findings regarding valuation and distribution are clearly erroneous.

Appellant has not demonstrated that the fair market value method is unreasonable. And other jurisdictions have held that the fair market value method is a reasonable method to determine the value of trust assets. *See, e.g., Boston Safe Deposit & Trust Co. v. Stone*, 348 Mass. 345, 203 N.E.2d 547, 551 (1965) (stating that trustee must divide up trust property in accordance with fair market value of property at the time of the distribution in kind); *In re Sturdevant*, 340 N.W.2d 888, 891 (N.D. 1983) (holding that fair market value is a reasonable method to establish value of trust's interests in corporations). We also point out that, although not mandatory, the consistency of the trustees' use of the same method for estate tax purposes and for distribution of trust assets promotes simple and efficient resolution of estate-related matters. Further, that the IRS found the values used to be reasonable contributes to our conclusion that the court's finding of reasonableness is not clearly erroneous.

1. Generally, determining what is reasonable is a question of fact. *See, e.g., Ford Motor Credit Co. v. Hertzberg*, 511 N.W.2d 25, 27 (Minn.App.1994) (holding that determining whether a sale is commercially reasonable is a question of fact), *review denied* (Minn. Mar. 31, 1994); *Ryan v. Bigos Props.*, 351 N.W.2d 680, 681 (Minn.App.1984) (stating that reasonable value of attorney's services is a question of fact).

2. The parties have not raised or addressed, and therefore we do not consider, the accuracy of the discount used to obtain the fair

market value of CSC stock. Furthermore, we note that there are additional questions not addressed by the parties, including whether, under the investment value method, the corporate stewardship duty of majority shareholder toward the minority shareholders limits Joseph's ability to reap the full benefit Robert attributes to Joseph's majority block of stock. The possible impact of this and other principles of fairness and good faith on the value of the stock to Joseph were not directly discussed by the parties and are not addressed in this opinion.

Appellant relies on the case of *Clement v. Larkey*, 314 Ark. 489, 863 S.W.2d 580 (1993), to assert that the investment method should have been used in this case. *Clement* is similar to this case in that it involved valuation of a controlling block of corporate stock and use of the investment approach by the personal representatives. *Id.* at 580. However, *Clement* did not hold that actual benefit to the recipient is the *only* reasonable method by which shares can be evaluated; it only determined that such a method was reasonable and appropriate under the facts of that particular case. *Id.* at 582–83. The court in *Clement* recognized the discretion of the personal representatives; it did not decide that the fair market value method is unreasonable. *Id.* Here, the district court determined that both the investment value method and the fair market value method were reasonable valuation approaches and held that the trustees could use either method.

Although the investment value method is a reasonable method, mandating that it be used could create some awkward situations. For example, if a decedent leaves a farm to two heirs "equally" and one heir already operates a farm adjacent to the decedent's farm, the inherited land would be of greater value to him than to the heir who does not own or farm any neighboring land. Under the investment value method, the personal representatives would need to determine the distribution of land based on its value to each heir. In the case before us, use of the investment value method would result in the brothers having a different per share value attached to the same stock. The shares of stock needed to become the controlling shareholder would be valued differently from the shares in excess of those needed for control. At least hypothetically, that one share at the point of achieving control would have tremendous value to Joseph compared to other shares. Carried to a logical extreme, the investment value method might present formidable complications for those attempting to reasonably and impartially distribute assets to beneficiaries who own an interest in the same business or neighboring property. The trustees had the discretion to avoid such a valuation trap. Thus, we conclude the district court did not abuse its discretion by approving the fair market valuation method used by the trustees.

■ Appellant further argues that the valuation method used by the trustees is contrary to the intent of the testator. Appellant claims that because of the greater value of CSC stock to Joseph, the assets distributed to him are worth more than those going to appellant and that this inequity runs contrary to King's intent that each should receive an equal share of her estate. The language of the trust does not indicate that a particular method of valuation is preferred, and trial testimony does not indicate that King had any particular method of valuation in mind. There is nothing in the record indicating that King's intent was that the trust assets should be of equal value *to the beneficiaries*. Both valuation methods at issue distribute the assets equally—one based on the value of the assets to the testator and one based on the value to each of the transferees. There is no indication that the method used is contrary to King's intent.

Finally, appellant contends that because either the investment or the fair market method of valuing assets could have been used, the belief of the trustees that the law required use of the fair market value method prejudiced their choice and denied appellant a reasonable opportunity to have his perspective considered. We decline to accept this argument. Appellant fails to provide any authority suggesting that

trustees must know the extent of their discretion when determining the method of valuing trust assets. In any event, the respondent trustees' vigorous defense on appeal of the use of the fair market value method demonstrates a commitment to that approach even in circumstances when the option to use the investment valuation method was available to them.

## DECISION

The district court did not abuse its discretion by finding that the trustees' use of the fair market value method was reasonable and within their discretion. That the trustees initially may have thought that they did not have discretion to use the investment method of valuation does not affect the decision in this case.

**Affirmed.**