*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1513**

In re the Estate of Mae Anderson, Deceased

**Filed July 5, 2016
Affirmed; motion denied
Klaphake, Judge**[*]

Stevens County District Court
File No. 75-PR-10-343

Amy J. Doll, Fluegel, Anderson, McLaughlin & Brutlag, Chartered, Morris, Minnesota (for appellant Eugene Anderson)

Casey J. Swansson, Jon C. Saunders, Griffin R. Leitch, Anderson Larson Saunders & Klaassen, P.L.L.P, Willmar, Minnesota (for respondents Lloyd Anderson and Ronald Anderson)

Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Klaphake, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KLAPHAKE**, Judge

In this dispute regarding the valuation and sale of the estate's property, appellant argues that the district court clearly erred by finding that appellant breached his fiduciary duty as the estate's personal representative and abused its discretion by removing appellant

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

as personal representative. Because the record supports the district court's determination that appellant breached his fiduciary duty by selling the property below market value due to a conflict of interest, we affirm the district court's decision to void the sale and observe no abuse of discretion in its decision to remove appellant as personal representative. We also deny appellant's motion to correct the record as unnecessary.

## D E C I S I O N

### I.

"A personal representative is a fiduciary who shall observe the standards of care in dealing with the estate assets that would be observed by a prudent person dealing with the property of another . . . ." Minn. Stat. § 524.3-703(a) (2014). But if a personal representative has "special skills or expertise, the personal representative is under a duty to use those skills." *Id.* A personal representative has a duty "to settle and distribute the estate" in accordance with the will "and as expeditiously and efficiently as is consistent with the best interests of the estate." *Id.* Whether a fiduciary duty has been breached is a question of fact. *See Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 778 (Minn. App. 2006) (explaining that "the district court is the trier of fact in determining the equitable remedy for a breach of fiduciary duty").

"[A]ppellate courts evaluate the district court's findings concerning wills and trusts under a clearly erroneous standard and review conclusions of law de novo." *In re Trust Created Under Agreement with Lane*, 660 N.W.2d 421, 425-26 (Minn. App. 2003). When reviewing the district court's factual findings, we view the record in the light most favorable to the judgment. *In re Estate of King*, 668 N.W.2d 6, 9 (Minn. App. 2003). "A

finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Estate of Neuman*, 819 N.W.2d 211, 215 (Minn. App. 2012).

Following decedent Mae Anderson's (Mae) death in 2010, appellant Eugene Anderson, one of Mae's sons, was appointed as personal representative of Mae's estate. Mae bequeathed her estate in a will to her four children "share and share alike." Mae's will contained a provision regarding her 400 acres of farmland:

> My grandson, Mark Anderson, has for many years been renting my farmland. I direct that:
>
> a.     He be allowed to continue farming the land during the administration of my estate on the same terms and conditions under which he was renting the land at the time of my death.
>
> b.     In the event the estate elects to offer for sale the land which Mark Anderson has been renting, that he be given an opportunity to purchase the land and a right of first refusal under which he may match the terms of an offer the estate otherwise intends to accept from another buyer.
>
> c.     In the event my estate does not sell the land Mark Anderson has been renting, I hereby express my desire that he be given a fair opportunity to purchase at such future time as all or part of the real estate shall be sold to someone outside of my heirs, as set forth in this Will, or their issue.

To help pay Mae's estate tax, appellant obtained a five-year mortgage on the property. To ensure funds for payments, appellant executed a five-year rent agreement with Mark Anderson, his son, allowing Mark Anderson to continue farming the land at $75 per acre, the below-market rate he had paid before Mae's death.

Eventually, the other heirs asked that the estate be closed. Appellant sold the property as a whole by advertisement to Mark Huebner, a neighboring farmer. Mark

Anderson then exercised his right of first refusal, and appellant executed a purchase agreement with Mark Anderson for $1.6 million. Respondents Ronald Anderson and Lloyd Anderson, appellant's brothers, challenged the sale process and price.

Following a trial, the district court determined that appellant breached his fiduciary duty to the estate "by failing to observe the standards of care in dealing with the estate that would be observed by a prudent person dealing with the property of another" and "by failing to settle and distribute the estate as expeditiously and efficiently as is consistent with the best interests of the estate." These conclusions were based, in part, on the district court's findings that appellant (1) should have sold the property in smaller parcels at an open auction rather than as a whole by advertisement; (2) accepted a price below the fair market value of the property; and (3) entered purchase agreements with Huebner and Mark Anderson despite having conflicts of interest with each. Appellant challenges each of these findings in turn.

As an initial matter, respondents argue that appellant's history of farming and purchasing farmland at auction gave appellant "special skills or expertise" that raised his standard of care beyond that which "would be observed by a prudent person dealing with the property of another." *See* Minn. Stat. § 524.3-703(a). We disagree. Although appellant had purchased farm property in the past, he had never sold it and relied on his attorney's advice regarding how to sell the property and how to draft the advertisement. In addition, appellant's farming skills did not create expertise in selling the estate's property, and appellant had no prior experience as a personal representative or with the management of an estate. Because appellant did not have special skills relevant to the challenged sale of

4

the estate's property, we agree with the district court that he was required to "observe the standards of care in dealing with the estate assets that would be observed by a prudent person dealing with the property of another." *See id.*

## A.    Sale Process

A personal representative may "sell, mortgage, or lease any real or personal property of the estate or any interest therein" as long as the personal representative acts "reasonably for the benefit of the interested persons." Minn. Stat. § 524.3-715(23) (2014). In doing so, the personal representative does not need "the consent of any devisee or heir unless the property has been specifically devised to a devisee or heir by decedent's will." *Id.* But a personal representative must "settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and applicable law, and as expeditiously and efficiently as is consistent with the best interests of the estate." Minn. Stat. § 524.3-703(a). Whether a sale of estate property is "commercially reasonable" is a question of fact. *King*, 668 N.W.2d at 10 n.1.

As the district court found, Mae's will neither required that the property be sold nor forbade the distribution of the land to Mae's beneficiaries. After receiving pressure from respondents to close the estate, appellant advertised the property in the local paper for one month, requesting sealed bids on the property as a whole. The advertisement produced only one low bid, Huebner's, which appellant accepted. The district court adopted language in respondents' Strong Realty appraisal that selling land in smaller parcels rather than in one large parcel usually increases the sales price by attracting more potential buyers. The district court also credited auctioneer Allen Henslin's testimony that prices increase

5

when land is sold in smaller parcels and in open outcry auctions with live bidding. The district court therefore found that appellant should have sold the property in smaller parcels at an open outcry auction to increase the purchase price.

But the district court mischaracterized the evidence at trial because neither the Strong Realty appraisal nor Henslin stated that *the estate's property* would have obtained a higher purchase price in smaller parcels at an open outcry auction. The credited evidence merely speculates that a different sales method could have obtained a higher price. Such speculation does not establish commercial unreasonableness. *See Ford Motor Credit Co. v. Hertzberg*, 511 N.W.2d 25, 27 (Minn. App. 1994) ("Allegations that a better price could theoretically have been obtained at a different time or through a different method of sale alone are insufficient to raise a factual issue as to commercial reasonableness."), *review denied* (Minn. Mar. 31, 1994).

There is also no evidence that anyone suggested a live auction of smaller parcels or that anyone objected to appellant's chosen sales method before it resulted in only one low bid. In fact, both appellant and his former attorney testified that respondents agreed to a sale by advertisement. Appellant consulted with his then-attorney, who believed that dividing the property would not have increased the price because farmers like to get the most land they can in one area. Appellant relied on his attorney's advice regarding the sales method and the language of the advertisement. Because a "prudent person dealing with the property of another" would rely on his attorney's advice and on the consent of the other interested parties to the sale process, the record does not support the district court's finding that appellant's chosen method of sale was commercially unreasonable. *See* Minn.

6

Stat. § 524.3-703(a); *see also* Minn. Stat. § 336.9-627(b)(1) (2014) (stating that a sale is commercially reasonable under the Uniform Commercial Code if it is made "in the usual manner on any recognized market"). But although the process itself was commercially reasonable, it did not result in a reasonable price.

**B.    Sale Price**

Shortly after Mae's death, appellant retained licensed residential appraiser Michael Schultz, who appraised the property at $1,693,000 as of Mae's death on August 13, 2010. This figure included the home and all of the outbuildings on the property, even though several buildings were later determined to belong to appellant, not Mae's estate. Because farmland prices rose following Mae's death, respondents retained Strong Realty, which appraised the property at $3.04 million in February 2013. This appraisal again included all of the outbuildings. The district court adopted the Strong Realty appraisal value of $3.04 million and subtracted the value of appellant's improvements to the property to reach a fair market value of at least $2,940,519 in September and October 2013.[1] As a result of this valuation, the district court found that the bid price of $1.6 million was below fair market value and that appellant breached his fiduciary duty by accepting this price. "Assigning a specific value to an asset is a finding of fact." *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975).

Appellant argues that the district court clearly erred by relying on the Strong Realty appraisal because the appraisal did not take into account Mark Anderson's right of first

---

[1] Neither party challenges the value of the improvements that the district court subtracted from the Strong Realty appraisal figure.

7

refusal. The Strong Realty appraiser testified that he did not think that the right of first refusal affected the appraised value, but that the appraisal was "possibl[y]" not accurate if rights of first refusal were shown to negatively impact property values. In contrast, Henslin testified that rights of first refusal negatively affect purchase price "anywhere between $1,500 to $2,000 an acre." And Schultz agreed that rights of first refusal negatively impact property values, stating that he would not have done the original appraisal if he had been aware of the right of first refusal because he would have been unable to find comparable sales. Caselaw also suggests that a right of first refusal can impose a burden on market value. *See Winter v. Skoglund*, 404 N.W.2d 786, 791 (Minn. 1987) (discussing a right of first refusal of corporate shares).

Due to the lack of specific evidence regarding the property's fair market value in 2013 with Mark Anderson's right of first refusal, appellant argues that the district court should have adopted the $1.6 million bid as the fair market value—the value the market was willing to bear in an arm's length transaction. *See Equitable Life Assurance Soc'y of the United States v. Cty. of Ramsey*, 530 N.W.2d 544, 555 (Minn. 1995) (defining market value as "the price for which property would sell upon the market at private sale" (quotation omitted)). But at the time of the bid, no one believed that the fair market value of the property was $1.6 million. Even appellant thought that the bid was too low because farmland prices had increased since the original appraisal and remained high in 2013. The record does not support appellant's assertion that the fair market value in 2013 was $1.6 million.

Even if the district court's finding of $2,940,519 as the fair market value in September and October 2013 is clearly erroneous because it did not take into account the right of first refusal, the exact value of the property is not critical to our analysis. The issue here is not whether the district court's valuation was clearly erroneous but whether the $1.6 million bid represented a reasonable estimate of the property's fair market value in 2013, and it did not. *See Hertz*, 304 Minn. at 145, 229 N.W.2d at 44 (explaining that the value need not be exact but only "within a reasonable range of figures"). The district court did not need to determine an exact fair market value to find that the sole bid was low and that appellant breached his fiduciary duty by accepting the low bid. *See id.* Everyone involved agreed that farmland prices were high in 2013 and that the $1.6 million bid was below fair market value. "[A] prudent person dealing with the property of another" would have concluded that accepting this low bid would not be "consistent with the best interests of the estate." *See* Minn. Stat. § 524.3-703(a). Because appellant failed to observe the required standard of care by selling the estate's property for below its fair market value, we affirm the district court's determination that appellant breached his fiduciary duty as personal representative.

## C. Conflict of Interest

The district court also concluded that appellant's purchase agreements with Huebner and Mark Anderson were "affected by a substantial conflict of interest" and declared the conveyance to Mark Anderson void. A transaction "which is affected by a substantial conflict of interest on the part of the personal representative[] is voidable by any person interested in the estate except one who has consented after fair disclosure, unless the will

9

or a contract entered into by the decedent expressly authorized the transaction." Minn. Stat. § 524.3-713(1) (2014). A personal representative has a conflict of interest if his personal interests directly conflict with the decedent's interests. *In re Estate of Munson*, 238 Minn. 366, 370, 57 N.W.2d 26, 29 (1953). For example, the personal representative in *Munson* was removed because he was "personally and financially interested as an heir" to the estate and because he failed to carry out the terms of the will. *Id.*

### Huebner

The district court found that appellant had a conflict of interest because he "had a business relationship" with Huebner. Specifically, the district court found that "Huebner farmed a neighboring parcel of land and did custom farming for both [appellant] and Mark Anderson." But the record does not support this finding because, although his direct testimony was ambiguous, appellant clarified on cross-examination that Huebner had only performed custom farming for him, not for Mark Anderson. There is also no evidence that appellant "had a business relationship" with Huebner because the record does not reveal the timing and extent of Huebner's custom farming for appellant.

More importantly, no evidence in the record suggests that the relationship between appellant and Huebner affected Huebner's bid or appellant's acceptance of that bid. Appellant testified that he neither solicited nor discouraged any bidding and that he accepted Huebner's bid because he believed that he had followed the correct procedure and that "the public had spoken on what they thought they were willing to pay." Appellant did not appear concerned about maintaining his relationship with Huebner because he initially

10

asked Huebner to raise his bid and testified that he could get someone else to perform custom farming if needed.

Respondents suggest that the proximity of Huebner's farm to appellant's farm itself creates a conflict of interest. We disagree. Where a sale does not benefit the personal representative to the detriment of the estate, a personal representative can accept a bid from a neighboring farmer without raising a conflict-of-interest issue. *See* Minn. Stat. § 524.3-713 (2014) (stating the standard for voiding a sale).

The record does not support a finding of any conflict of interest regarding appellant's relationship with Huebner, let alone a substantial one. *See id.*; *State v. Williams*, 451 N.W.2d 886, 890 (Minn. App. 1990) (defining "substantial" as a "considerable size or amount" (quotation marks omitted)). Appellant's neighborly relationship with Huebner does not create a direct conflict between appellant's interests and the interests set forth in Mae's will. *See Munson*, 238 Minn. at 370, 57 N.W.2d at 29. Instead, the conflict of interest here relates to appellant's relationship with Mark Anderson.

*Mark Anderson*

The district court also found that appellant had a conflict of interest because he acted for the benefit of his son and for his personal benefit as a farmer and building owner.

The father-son relationship between appellant and Mark Anderson did not alone create a conflict of interest. *See Cain v. McGeenty*, 41 Minn. 194, 194, 42 N.W. 933, 933 (1889) (stating that a father-son relationship can be considered but is not enough to "infer fraud"). Because Mae's will named appellant as personal representative and gave Mark Anderson a right of first refusal, an eventual sale of the property to Mark Anderson alone

11

does not suggest a substantial conflict of interest. *See* Minn. Stat. § 524.3-713(1) (stating that even a transaction affected by a substantial conflict of interest is not voidable when the will expressly authorizes the transaction).

The district court determined that appellant had a conflict of interest due to the nature of appellant's and Mark Anderson's farming operations. The district court found that appellant and Mark Anderson "were actively involved in farming," "shared machinery," and helped each other in their farming and cattle operations. In addition, "[appellant] admitted that the more acreage he and his son owned, the more efficiently their businesses could be conducted, resulting in greater profitability for both." The district court also discredited appellant's testimony that he had not discussed the right of first refusal with Mark Anderson before accepting Huebner's offer because appellant and Mark Anderson "had the same residence address, farmed together, raised beef cattle together, and shared equipment, and . . . Mark [Anderson] rented some of his father's land." The record supports the district court's findings regarding the nature of appellant's and Mark Anderson's farming operations.

The district court also determined that appellant had a conflict of interest due to the presence of his buildings on the estate property. The district court found that appellant would have had to remove his buildings "at substantial expense" if he had sold the property to anyone other than himself or Mark Anderson. "By accepting the Huebner auction bid and then his son Mark's offer under his right of first refusal, [appellant] was able to retain these structures on the land, to his own benefit and without the expense of moving them." Appellant is correct that the record contains no discussion of the expense involved in

12

removing the buildings. Nevertheless, the district court could infer that appellant would have to remove the buildings if he sold the property to a third party or at least that appellant benefited by selling the land to Mark Anderson and not having to address the issue.

We conclude that the record supports the district court's finding of a substantial conflict of interest. In his role as personal representative, appellant was required to act as "a prudent person dealing with the property of another" and in "the best interests of the estate." *See* Minn. Stat. § 524.3-703(a). This standard of care required appellant to get the best possible price for the property. But as a father, co-farmer, and owner of buildings that would otherwise have to be removed from the property, appellant had a competing interest to sell the property to Mark Anderson at a lower price. Appellant's personal interests were in direct conflict with the estate's interests and appellant therefore had a substantial conflict of interest. *See* Minn. Stat. § 524.3-713; *Munson*, 238 Minn. at 370, 57 N.W.2d at 29.

Appellant argues that, even if he had a substantial conflict of interest, the sale to Mark Anderson cannot be voided because the will expressly authorized Mark Anderson to exercise his right of first refusal. *See* Minn. Stat. § 524.3-713(1). But as respondents point out, the will did not expressly authorize a sale of the property to Mark Anderson at below fair market value. The right of first refusal only gave Mark Anderson the right to "match the terms of an offer the estate otherwise intends to accept from another buyer." The district court interpreted this provision to include an intention to accept the *fair market value* of the property from another buyer. This interpretation is supported by appellant's fiduciary duty to act in the best interests of the estate. *See* Minn. Stat. § 524.3-703(a). Absent unusual circumstances, disposing of the property for below its fair market value

13

would likely not be in the best interests of the estate or the interested persons. *See id.*; Minn. Stat. § 524.3-715(23). We also note that appellant does not challenge the district court's interpretation of the right of first refusal on appeal.

In sum, the record supports the district court's determination that appellant breached his fiduciary duty to the estate by selling the property at below fair market value due to a substantial conflict of interest. We therefore affirm the district court's decision to void the sale to Mark Anderson. *See* Minn. Stat. § 524.3-713.

## II.

Appellant also challenges the district court's decision to remove appellant as the estate's personal representative. "The district court has discretion to determine suitability of a personal representative, and that determination will not be reversed absent an abuse of discretion." *In re Estate of Martignacco*, 689 N.W.2d 262, 269 (Minn. App. 2004), *review denied* (Minn. Jan. 26, 2005). We will not reverse the district court's decision to remove a personal representative "unless the district court clearly abused its discretion by disregarding the facts." *Id.*

> Cause for removal exists when removal is in the best interests of the estate, or if it is shown that a personal representative or the person seeking the personal representative's appointment intentionally misrepresented material facts in the proceedings leading to the appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of the office, or has mismanaged the estate or failed to perform any duty pertaining to the office.

Minn. Stat. § 524.3-611(b) (2014).

14

The district court found good cause to remove appellant as personal representative "based on mismanagement" of Mae's estate. *See id.* The district court's decision was based on its findings that appellant mismanaged the sale, sold the property for below fair market value, and was affected by a substantial conflict of interest. In addition, the district court relied on its other conclusion that appellant "breached his fiduciary duty as personal representative by failing to settle and distribute the estate as expeditiously and efficiently as is consistent with the best interests of the estate." *See* Minn. Stat. § 524.3-703(a). Appellant does not challenge this alternative conclusion regarding his breach of fiduciary duty on appeal and does not assert that he efficiently administered the estate.

Instead, appellant argues that he was improperly removed as personal representative because the district court relied on his deposition transcript, which was not admitted into evidence. The district court was provided a copy of appellant's deposition to follow along while appellant was cross-examined at trial regarding statements he made in his deposition. But the deposition transcript was not introduced into evidence. In its order, the district court cited language from appellant's deposition transcript regarding the nature of his and Mark Anderson's farming operations and the importance of proximity when purchasing farmland.

Appellant filed a motion in this court to remove his deposition transcript from the record. We deny appellant's motion as unnecessary because, even though appellant did not use the direct quotes in his trial testimony, appellant testified to essentially the same facts and the record supports the district court's conclusion that appellant mismanaged Mae's estate. *See Clark v. Clark*, 642 N.W.2d 459, 467 (Minn. App. 2002) (denying a

motion to strike information in the record as unnecessary to the resolution of the appeal); *see also* Minn. R. Civ. App. P. 110.01 (defining the record on appeal).

The record shows that appellant did very little to administer the estate in 2011 and 2012, despite requests from respondents that he close out the estate. During this time, Mark Anderson continued to rent the property at a below-market rate. Appellant eventually undertook a sale by advertisement and then accepted the sole low bid at a time when farm prices were high. He accepted the bid knowing that Mark Anderson would exercise his right of first refusal and that appellant would benefit as a farmer and as a building owner. Because appellant sold the property for below fair market value, was affected by a substantial conflict of interest, and failed to expeditiously settle and distribute the estate, allowing Mark Anderson to continue renting the property at below market value, the record supports the district court's conclusion that appellant mismanaged Mae's estate. The district court therefore did not abuse its discretion by removing appellant as personal representative. *See* Minn. Stat. § 524.3-611(b).

**Affirmed; motion denied.**