*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0604**

In the Matter of the Leonard E. Erlandson and
Marion L. Erlandson Irrevocable Trust.

**Filed January 22, 2024**
**Affirmed**
**Florey, Judge***

Clay County District Court
File No. 14-CV-21-1395

Michael T. Andrews, Matthew D. Kirschenmann, ABST Law, Fargo, North Dakota (for appellant Kim Aasand)

Robert G. Manly, Bennett A. Lystad, Vogel Law Firm, Fargo, North Dakota (for respondent-trustee Richard Erlandson)

Considered and decided by Connolly, Presiding Judge; Reyes, Judge; and Florey, Judge.

**NONPRECEDENTIAL OPINION**

**FLOREY**, Judge

On appeal in this trust dispute, appellant argues that the district court erred in interpreting the trust; abused its discretion by declining to surcharge respondent-trustee for his alleged mismanagement of the trust; and abused its discretion by denying appellant's request for reimbursement of his attorney fees. We affirm.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

# FACTS

Trustors Leonard and Marion Erlandson (the trustors) had seven children, including: respondent Richard Erlandson, David Erlandson, JoAnn Aasand, and Kenneth Erlandson.[1] In December 1998, or January 1999, the trustors approached JoAnn and her husband appellant Kim Aasand (the Aasands) about the trustors' financial difficulties and possible avenues for alleviating these difficulties. The Aasands subsequently contacted an attorney, who recommended creating a trust for the benefit of trustors.

On June 30, 1999, the Leonard E. Erlandson and Marion L. Erlandson Irrevocable Trust (the trust) was created for the benefit of the trustors. Its purpose was to "provide assistance to the beneficiaries thereof in addition to that to which they may be entitled to via public assistance including by way of illustration and not limitation, Medicaid." The trust estate consisted of the trustors' Otter Tail County real property (the property), and section three of the trust provides: "Trustor, and any other person, shall have the right at any time to add property acceptable to Trustee to this trust. Such property, when received and accepted by Trustee, shall become part of the trust estate."

Section five of the trust provides:

> Trustee shall hold, manage, invest, and receive the trust estate in the manner provided, shall collect the income, and shall dispose of the net income and principal as follows:
>
> (a) Trustor shall be allowed to reside at the [property] for the remainder of their natural lives.
> (b) If the . . . property . . . is sold, prior to the deaths of the Trustor and Trustee does not purchase replacement

---

[1] Except for respondent, the trustors and their children will be referred to individually by first name for clarity.

property, the proceeds from the sale, less repayment of any contributions made to this Trust from any part[ies] other than Trustor, shall remain in trust and the Trustor shall receive the annual income generated by the trust corpus for their joint or separate lives.

(c) During the life of the Trustor, Trustee shall pay to Trustor, in monthly or other convenient installments an amount, which in the Trustee's discretion is, satisfactory for the health, education, maintenance and support of the Trustor taking into consideration other sources of income available to Trustor.

(d) Upon the death of the surviving Trustor, Trustee shall dispose of the principal and income constituting the trust estate on said date in the following manner:

    i. any contributions made to the Trust by any party other than Trustor shall be repaid with interest accrued at a rate of eight percent (8%) from the time of the original contribution. In the event the contributions made by parties other than Trustor exceed the funds then remaining in the Trust, each Contributor shall receive a pro rata share of the funds then remaining;

    ii. upon repayment of any and all contributions, any and all funds remaining at that time shall be disbursed free of trust to Trustor's children in substantially equal shares . . . . Should any of the aforementioned children predecease Trustor, then their share shall lapse.

The trust was drafted by the attorney, who testified that the trust was created to ensure that the trustors had housing for life by allowing individuals to put money into the trust to ensure that the trustors' home was maintained, taxes were paid, and the trustors had extra cash when needed. And, after the trust was created, a Dean Witter account was opened in the name of the trust.

JoAnn was appointed trustee, and she served as trustee until she died in December 2014. Under the trust terms, respondent became the successor trustee upon JoAnn's death.

Leonard passed away in November 2018, leaving Marion as the sole trustor. Respondent subsequently contacted a realtor to assist in selling the property because Marion's health was diminishing, and she could no longer reside at the property. In anticipation of the sale, respondent opened a separate trust account with Gate City Bank.[2] To open the account, respondent provided a $2,000 loan to the trust with terms of 0% interest and "repayment when property was sold."

The property was sold for $155,500 in October 2020, and $144,588.70 was then deposited into the Gate City Bank trust account, which represented the amount of the purchase price less realtor fees and closing costs. Respondent was later repaid, from the trust, the $2,000 loan he made to the trust.

After the property was sold, respondent did not purchase a replacement property for Marion. Appellant then began emailing respondent requesting to be paid, from the trust, the contributions that he and JoAnn allegedly made to the trust. Respondent informed appellant that, upon consulting with legal counsel, he needed more time to make a final determination as to the final distribution of the proceeds from the sale of the property. Respondent later issued payments in March 2021, related to work that was performed on the property to prepare it for sale. Although appellant continued to request information from respondent concerning the sale of the property, respondent ignored his requests.

In April 2021, appellant filed a petition alleging that, "[f]rom 1999 through 2021, [appellant] and his late wife, JoAnn . . . made contributions for the benefit of [the trustors]

---

[2] Counsel for respondent stated at oral argument that a separate trust account needed to be opened because the trust's Dean Witter account had closed.

4

in the principal amount of $100,251.95." The petition sought an order compelling respondent, as trustee, "to repay from the net proceeds from the sale of the . . . [p]roperty contributions made for the benefit of [the trustors] that are due and owing to [appellant] in the principal amount of $100,251.95, plus interest." Appellant also sought a "complete accounting" of the proceeds from the sale of the property, and his costs and attorney fees.

In May 2021, respondent paid approximately $20,000 in taxes related to the sale of the property, leaving approximately $116,000 in the trust account. In response, appellant filed an ex parte motion for a temporary restraining order (TRO) (1) compelling respondent to immediately inform the district court and interested parties of the amount of money remaining in the trust; (2) requiring respondent to refrain from further expenditures from the trust; (3) compelling respondent to turn over all "work papers" used by trust accountants to compile the 2020 tax returns; and (4) compelling respondent to provide an accounting. A referee denied the ex parte request and set the matter for a hearing.

Following a hearing, appellant's motion for a TRO and temporary injunction was denied. In denying the motion, the referee ordered that respondent "may continue to pay the currently due and any future fees and costs from" the attorney and law firm retained by the trust "as professional fees and costs associated with the administration of the Trust, including defense of this litigation." Appellant subsequently requested that the order be stayed pending judicial review and requested removal of the referee from presiding over future proceedings. The district court later affirmed the referee's order "in its entirety," and denied the request to remove the referee.

5

In the meantime, counsel for respondent sent a letter to all interested parties requesting information related to contributions to the trust. Respondent, Kenneth, and David all submitted claims related to various contributions they allegedly made to the trust. Respondent then served a notice of proposed distribution and final account on all interested parties identifying those who had made claims against the trust and outlining their alleged contribution amounts as follows: (1) appellant, $100,251.05; (2) Kenneth, $18,641.30; (3) respondent, $8,198.10; and (4) David, $4,520. But, because money from the trust had been expended to pay attorney fees on behalf of the trust, the trust balance was not sufficient to cover all the alleged trust contributions. Consistent with the terms of the trust, respondent proposed that each claimant receive a proportionate share of the remaining trust funds.

On July 30, 2021, appellant filed an omnibus brief objecting to respondent's proposed distribution of the trust proceeds and requesting his preferred distribution. And after Marion passed away in October 2021, appellant filed a motion for partial summary judgment seeking a determination that (1) he is a qualified beneficiary of the trust; (2) the amount of his contributions equals $100,251.95; and (3) respondent's, David's, and Kenneth's claims of trust contributions are not payable from the trust. The district court denied the motion.

An evidentiary hearing was held in October 2022, related to appellant's objection to the proposed distribution of trust proceeds. Following the hearing, the district court determined that appellant is not a qualified beneficiary of the trust and, therefore, respondent owed him no duty of loyalty. The district court also found that "'proceeds'

6

from the sale of the . . . [p]roperty would include the sale price minus any expenses related to the preparation and ultimate sale of the property, which included realtor fees, cleaning fees, and tax liabilities," as well as the $2,000 loan from respondent to the trust as it was used to open the Gate City Bank trust account to prepare the property for sale. The district court then found that, based upon the evidence in the record, the "total trust contributions consist of $86,626.35 from [appellant] and $17,191 from Kenneth." But the district court found that, because "sufficient funds will not be available to reimburse the full amount of the Trust contributions, [appellant] and Kenneth . . . shall be reimbursed based on their respective pro rata share of the remaining Trust corpus." Finally, the district court determined that appellant is not entitled to reimbursement of attorney fees, and that "[a]ny and all attorney[] fees associated with this litigation, on behalf of [respondent] as acting Trustee, were properly paid from the Trust corpus." This appeal follows.

## DECISION

### I.

Appellant challenges the district court's interpretation of the trust in calculating the trust contributions. We review the district court's findings of fact concerning a trust for clear error. *In re Est. of King*, 668 N.W.2d 6, 9 (Minn. App. 2003). In conducting this review, the record is viewed in the light most favorable to the judgment of the district court. *Id.* We will not reverse for clear error unless we have a definite and firm conviction that a mistake has been made. *Id.* But where a trust agreement is unambiguous, we review the district court's interpretation of that agreement de novo. *In re Est. & Tr. Anderson*, 654 N.W.2d 682, 687 (Minn. App. 2002), *rev. denied* (Minn. Feb. 26, 2003).

7

A court's "purpose in construing a trust agreement is to ascertain and give effect to the grantor's intent." *In re Stisser Grantor Tr.*, 818 N.W.2d 495, 502 (Minn. 2012). "Where the language of the trust instrument is not ambiguous, the intent of the settlor must be ascertained from the four corners of the agreement, without resort to extrinsic evidence of intent." *In re Tr. Created Under Agreement with McLaughlin*, 361 N.W.2d 43, 44-45 (Minn. 1985). "Therefore, the first step in the analysis of a trust instrument is to determine the intent of the settlor from the plain language of the instrument." *Id.* at 45.

Appellant argues that the district court erred in interpreting the trust (A) when it calculated the trust contributions; (B) by concluding that the term "proceeds," as used in the trust, meant the sale price of the property minus any expenses related to the preparation and sale of the property, including capital gains taxes; and (C) by determining that respondent owed no duty of loyalty to appellant. These arguments are addressed in turn.

### A.    *Calculation of trust contributions*

The district court found that "[u]nder the plain and unambiguous language of the Trust, to be considered a trust contributor and entitled to trust contributions, one must have *contributed to the Trust*." The district court then found that "trust contributions only include those payments made (1) while the Trust was in existence, (2) were made to the Trust and (3) were received and accepted as trust contributions by the acting trustee when the payments were made." Based on this reasoning, the district court determined that payments made by appellant before the trust was created, totaling $2,800, were not trust contributions because they were not made when the trust was in existence. Similarly, the district court determined that trust contributions did not include "any monies paid to

8

[trustors] in their individual capacity, and not directly to the Trust," including $10,825.60 from appellant and his wife that was paid to trustors in their individual capacity and did not go into the Dean Witter Trust Account. And the district court found that the additional claims submitted by respondent for $8,198.10, David for $4,520, and Kenneth for $1,450 "were also not paid directly to the Trust and were not received and accepted by the acting trustee as trust contributions when the payments were made. They were simply gifts" to trustors. As such, the district court determined that the "total trust contributions consist of $86,626.35 from [appellant] and $17,191.30 from Kenneth."

Appellant agrees that the "district court correctly denied reimbursement of [respondent], David, and the excess of Kenneth's contributions because they were not presented to and accepted by JoAnn during her administration." But appellant contends that the district court erroneously interpreted the trust by adding the requirements that payments could only be considered Trust contributions if (1) they were made after the trust was created, and (2) they "flowed through" the Trust's Dean Witter account. He argues that certain monies paid by him and his wife to trustors that the district court found failed to satisfy these requirements should be considered trust contributions because JoAnn accepted them into the trust and the record reflects that the monies were never intended as gifts.

We are not persuaded. "[A]s a general rule, an express trust in land must be in writing in order to be enforceable." *Dietz v. Dietz*, 70 N.W.2d 281, 284 (Minn. 1955). Thus, as respondent points out, because the initial trust estate was the property, "[t]here could not be a valid Trust that contained the . . . property . . . until the formal trust document

9

conveying the property was signed and effective, which was on June 30, 1999." And because the trust was not in existence prior to June 30, 1999, there could be no acceptance of trust contributions before that date. Therefore, any monies conveyed to trustors before the trust was executed cannot be considered trust contributions.

Moreover, the trust provides that "any contributions made *to the Trust*" shall be disposed of first by the trustee. (Emphasis added.) Thus, as the district court determined, the plain and unambiguous language of the trust states that an individual must have contributed *to the trust* in order to be entitled to trust contributions. Consequently, any payments that appellant and his wife made to trustors that were not paid directly into the trust cannot be considered trust contributions. Although appellant references his own trial testimony to support his position that all payments made by appellant and his wife to trustors, including payments that did not go into the Dean Witter Trust Account, were "conditioned on repayment from the proceeds" of the property, there is no need to consider this testimony because the trust is unambiguous. *See In re Tr. of Lawrence B. Schwagerl*, 965 N.W.2d 772, 780 (Minn. 2021) ("If we find a term or language to be unambiguous, we are not permitted to look at extrinsic evidence to create ambiguity within a document."). Accordingly, the district court did not err in calculating the trust contributions.

**B.      *Interpretation of the term "proceeds"***

Appellant also challenges the district court's interpretation of section 5(b) of the trust as it relates to "proceeds" from the sale of the property. As the parties acknowledge, the term "proceeds" is not defined within the trust. Generally, undefined words and phrases in trust agreements are construed according to their common and approved usage. *Stisser*,

10

818 N.W.2d at 502. The term "proceeds," as defined in *Black's Law Dictionary*, is "[t]he value of land, goods, or investments when converted into money; the amount of money received from a sale." 1458 (11th ed. 2019). Similarly, "net proceeds" are defined as "[t]he amount received in a transaction minus the costs of the transaction (such as expenses and commissions)." *Id.*

Here, the district court referenced the definition of "proceeds" contained in *Black's Law Dictionary* and determined that

> "proceeds" from the sale of the . . . [p]roperty would include the sale price minus any expenses related to the preparation and ultimate sale of the property, which included realtor fees, cleaning fees, and tax liabilities. This also includes the $2,000 loan from [respondent] to the Trust as it was used to open the Gate City Bank Trust Account in preparation for the sale of the . . . [p]roperty and ultimate termination of the Trust. The Court concludes that these expenses were necessary for the Trust to realize a true profit from the transaction.

Appellant disagrees with this determination and argues that the term "proceeds," as used in the trust, means the check issued by the closing company, which had already deducted the transaction costs associated with the sale. To support his position, appellant relies on the attorney's testimony that the term "proceeds," as used in the section 5(b) of the trust, means "[a]ny cash or other property received . . . in payment for . . . the sale of the [property]," such as the "check that's cut by the closing company." But the attorney testified that his interpretation of the term "proceeds" is based on his "understanding . . . of what proceeds means," and his belief that the "definition of proceeds is relatively straightforward." The district court implicitly found the attorney's testimony on this issue to not be credible, and we defer to that determination. *See Pechovnik v. Pechovnik*, 765

11

N.W.2d 94, 99 (Minn. App. 2009) (deferring to the district court's implicit credibility determination); *see also Kush v. Mathison*, 683 N.W.2d 841, 843-44 (Minn. App. 2004) (stating that due regard is given to the district court's opportunity to judge the credibility of witnesses), *rev. denied* (Minn. Sept. 29, 2004).

Moreover, the attorney acknowledged that he would look to *Black's Law Dictionary* to resolve any questions related to the definition of "proceeds," which is the same source used by the district court here in defining "proceeds." After looking to the dictionary definition of the term "proceeds," the district court determined that the proceeds from the sale of the property is the sale price "minus closing costs, realtor fees, fees for cleaning, taxes, and [a] loan to open [a] trust account for [the] deposit of proceeds." This determination comports with the common and approved usage of "proceeds" as defined in the dictionary. And the determination is logical because, until all expenses related to the sale of the property are realized, such as cleaning costs and taxes, there can be no determination of the realization of actual profits from the sale of the property. Finally, appellant cites no legal authority to support his position that the district court erroneously interpreted the term "proceeds" as contained in section 5(b) of the trust. As such, appellant cannot meet his burden to show that the district court erred in interpreting the term "proceeds." *See Waters v. Fiebelkorn*, 13 N.W.2d 461, 464-65 (Minn. 1944) ("[O]n appeal error is never presumed. It must be made to appear affirmatively before there can be reversal. . . . [T]he burden of showing error rests upon the one who relies upon it.").

Appellant also appears to argue that respondent's "withholding of Trust contributions indefinitely because the Trust does not specify an amount of time in 'hours'

12

or 'days' following a sale when repayment must occur was without merit." Appellant contends that he was prejudiced by respondent's withholding of trust proceeds because the trust no longer has a sufficient balance to repay his trust contributions. Thus, appellant argues that this court "should determine that Trust contributors were entitled to repayment from the 'net proceeds' of the property within a reasonable time after the sale, but in no event later than November 29, 2020."

Again, appellant is unable to show that he is entitled to the relief he seeks. As appellant acknowledges, "a review of the Trust does not indicate that contributions must be repaid within a specified period following the sale of the [p]roperty." Thus, respondent was under no obligation to pay appellant within a certain period of time. Instead, respondent, as trustee, owed a duty of loyalty to the trust beneficiaries. *See* Minn. Stat. § 501C.0802(a) (2022). He also had a duty to administer the trust impartially, "giving due regard to the beneficiaries' respective interests." Minn. Stat. § 501C.0803 (2022). In light of these duties, respondent had a duty to fully investigate appellant's claims. And, as respondent points out, "[a]ny delays in this matter were from [appellant's] own doing—he forced [respondent] to defend the Trust by filing the Petition, TROs, objection to the Notice of Proposed Distribution, partial summary judgment motion, and finally trial on this matter." Therefore, the district court did not err in interpreting the trust as it related to "proceeds" from the sale of the property.

## C. *Duty of loyalty*

Appellant challenges the district court's decision that respondent did not owe him a duty of loyalty under the trust. Appellant argues that, "[r]egardless of whether [he] is [1] a

qualified beneficiary, [2] the holder of an equitable mortgage, or [3] an 'interested person' with superior repayment rights, [respondent] breached the clear distribution directive for the proceeds of the [p]roperty under the Trust, and [appellant] suffered damage as a result."

### 1. *Qualified beneficiary*

The Minnesota Trust Code provides that "[a] trustee owns a duty of loyalty to the beneficiaries." Minn. Stat. § 501C.0802(a). A "'[b]eneficiary' means a person that: (1) has a present or future beneficial interest in a trust, vested or contingent; or (2) in a capacity other than that of trustee, holds a power of appointment over trust property." Minn. Stat. § 501C.0103(c) (2022). And a "qualified beneficiary" is defined as

> a beneficiary who, on the date the beneficiary's qualification is determined:
>
> (1) is a distributee or permissible distributee of trust income or principal;
> (2) would be a distributee or permissible distributee of trust income or principal if the interests of the distributees described in clause (1) terminated on that date without causing the trust to terminate; or
> (3) would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

Minn. Stat. § 501C.0103(m) (2022).

Appellant argues that he is a "qualified beneficiary of the proceeds of the [p]roperty" because "[u]nder the plain meaning of the term," the trust provides him with a "beneficial interest" in the proceeds of the property as a trust contributor. We disagree. The clear and unambiguous terms of the trust reflect that the trustors are the only trust beneficiaries. The terms of the trust also reflect that the trustors' children were the only named individuals identified as those who became eligible to receive distributions from the trust upon the

14

trustors' death, rendering the trustors' children first-in-line remaindermen and qualified beneficiaries. In fact, nowhere in the trust is appellant named or identified, and there is nothing indicating that the trust specifically provided appellant with any sort of beneficial interest. Instead, as the district court found, appellant's rights, as a trust contributor, "reflect that of a creditor, with an equal claim to other trust contributors, and superior" to the claims of creditors outside of the trust. Therefore, although appellant is a creditor of the trust, he not a qualified beneficiary.

## 2. *Equitable-mortgage holder*

Appellant also contends that, based upon his and the attorney's testimony, "and the distribution directives of section five of the Trust, [the trustors'] intent was clearly to collateralize repayment of Trust contributions with the equity in the [p]roperty—akin to a reverse mortgage." To support his position, appellant cites *First Nat'l Bank of St. Paul v. Ramier*, which states:

> As a general rule, in equity, when the real nature of the transaction between the parties is that of a loan, advanced upon the security of realty granted to the party making the loan, it may be treated as an equitable mortgage, without regard to the actual form of the instrument of conveyance. It is within the province of the trial court to determine, by looking beyond that form, the actual character of the transaction.

311 N.W.2d 502, 503 (Minn. 1981).

Appellant appears to argue that, because the trust should be treated as an equitable mortgage, respondent owed him a duty superior to those of other creditors. And appellant argues that, because "it is clear" that he and his wife and the trustors "intended for the

15

[p]roperty to collateralize Trust contributions," respondent's use of proceeds to pay the trust's general debts and himself "amounts to civil conversion."

Appellant's argument fails for two reasons. First, we generally do not consider issues not decided by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that an appellate court must generally limit its review to issues presented to and *considered by the district court*). As appellant acknowledges, the "district court did not rule on whether [appellant] had an equitable mortgage in the [p]roperty." And the record reflects that the district court did not consider appellant's civil-conversion argument. As such, these arguments are not properly before us.

Second, there is no need to look to the trustors' intent in creating the trust because the intent is clear from the document itself. *See Schwagerl*, 965 N.W.2d at 780 ("If we find a term or language to be unambiguous, we are not permitted to look at extrinsic evidence to create ambiguity within a document."). The document is clear that the intent of the trust's creation was to create a trust for the benefit of the trustors. If an equitable mortgage was intended to be created, such a transaction could have been created. But no such transaction was created. Although the trust's language clearly provides that contributors have superior rights to other creditors, respondent did not owe appellant a duty of loyalty because appellant was not a beneficiary of the trust. Accordingly, appellant is unable to show that respondent owed him a special duty because the trust was actually an equitable mortgage.

16

### 3. *Interested person*

Appellant further argues that respondent owed him a special duty because he is an interested person under Minn. Stat. § 501C.0201(b) (2022), who has the right to petition the district court under Minn. Stat. § 501C.0201(a) (2022), to invoke its jurisdiction. But as respondent points out, appellant's "ability to petition the district court and invoke its jurisdiction is not an issue" because, as reflected by this appeal, appellant has already filed a petition in this case. And appellant's ability to petition the district court as an "interested person" does not provide appellant with the same rights as a beneficiary of the trust. Therefore, appellant cannot establish that the district court erred by concluding that respondent did not owe appellant a duty of loyalty.

## II.

Appellant challenges the district court's decision not to surcharge respondent for his management of the trust. Such a decision is generally reviewed for an abuse of discretion. *See In re Will of Gershcow*, 261 N.W.2d 335, 338 (Minn. 1977) (holding that the district court did not abuse its discretion in declining to impose a surcharge on the trustee); *see also In re Tr. of Williams*, 631 N.W.2d 398, 407 (Minn. App. 2001) ("Damage awards are reviewed under an abuse-of-discretion standard."), *rev. denied* (Minn. Sept. 25, 2001). We apply a clear-error review to a district court's findings of fact. *Stisser*, 818 N.W.2d at 507.

Under the Minnesota Trust Code, a trustee has a duty to administer a trust "in good faith, in accordance with its terms and purposes and the interests of the beneficiaries." Minn. Stat. § 501C.0801 (2022). The trustee must "exercise reasonable care, skill, and caution" in prudently administering the trust. Minn. Stat. § 501C.0804 (2022). "Taking

17

the advice of legal counsel on such matters evidences prudence on the part of the trustee." Restatement (Third) of Trusts § 77 cmt. b(2); *see also In re Comstock's Will*, 17 N.W.2d 656, 664 (Minn. 1945).

Appellant claims that respondent "paid more than $70,000 to his legal counsel resisting [appellant's] Petition—a petition that [respondent's] unresponsiveness to [appellant's] serial requests for repayment required." He asserts that "[i]nstead of distributing the proceeds of the [p]roperty in accordance with the trust, [respondent] treated them as a kitty to repay general Trust obligations, himself and other creditors," and "proposed to repay claimed contributions that he knew were not received and accepted as such by JoAnn, further requiring [appellant] to object to [respondent's] proposed distribution." Thus, appellant argues that this court "should reverse the district court's determination that [respondent] should not be surcharged for his gross mismanagement and breach of the Trust."

We disagree. The district court found that respondent "acted in good faith while Trustee," and did not mismanage the trust. These findings are supported by the record. As addressed above, respondent did not owe appellant a duty of loyalty because appellant is not a beneficiary of the trust. And, because appellant was not a beneficiary of the trust, respondent would have breached his duties to the trust beneficiaries had he paid appellant without fully investigating his claims. Instead, the fact that respondent sought advice from legal counsel related to the trust administration demonstrates prudence on the part of respondent. *See Comstock*, 17 N.W.2d at 664. Moreover, the majority of the attorney fees incurred were due to appellant's actions, including filing for a TRO and seeking summary

18

judgment, both of which required a response by respondent and were ultimately denied by the district court. Therefore, appellant is unable to show that the district court abused its discretion in declining to surcharge respondent for his management of the trust.

**III.**

Finally, appellant challenges the district court's denial of his request for reimbursement of his attorney fees. This court will not reverse a district court's denial of a request for attorney fees absent an abuse of discretion. *In re Margolis Revocable Tr.*, 765 N.W.2d 919, 928 (Minn. App. 2009).

Minnesota Statutes section 501C.1004 governs an award of attorney fees from trust assets. *Lund ex rel. Revocable Tr. of Lund v. Lund*, 924 N.W.2d 274, 286 (Minn. App. 2019), *rev. denied* (Minn. Mar. 27, 2019). It provides that "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party from the trust that is the subject of the judicial proceeding." Minn. Stat. § 501C.1004 (2022).

Appellant contends that he is entitled to his attorney fees because his litigation (1) "successfully established that he and Kenneth were the only Trust contributors entitled to repayment from the proceeds" of the property; (2) "prevented the frivolous repayment claims" submitted by David, Kenneth, and respondent; and (3) demonstrated respondent's "gross mismanagement and breach" of the trust. We disagree. As addressed above, the district court found that respondent acted in good faith and did not mismanage the trust, and those findings are supported by the record. Moreover, even if appellant's petition challenging respondent's administration of the trust were considered successful, or

partially successful, this court noted in 2009 that "there is no Minnesota case requiring a trustee whose management of a trust has been challenged to pay attorney fees incurred by the successful challenger." *Margolis*, 765 N.W.2d at 928 (quotation omitted). And appellant cites no case since 2009 with such a holding. Further, as the district court found, "the majority of the fees incurred [in this case] have been due to appellant's actions." Accordingly, appellant is unable to show that the district court abused its discretion in denying his request for reimbursement of attorney fees.

**Affirmed.**