In re Cheryl Pete GRIGSBY,
Petitioner, Respondent,

v.

Frederick J. GRIGSBY, Jr., Appellant.

No. C0–01–2264.

Court of Appeals of Minnesota.

July 30, 2002.

A. Larry Katz, Susan A. Daudelin, Katz & Manka, Ltd., Minneapolis, MN, for respondent.

Frank R. Berman, Julia A. O'Brien, Frank R. Berman, P.A., Bloomington, MN; and Daniel J. Goldberg, Messerli & Kramer, P.A., Minneapolis, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge, KLAPHAKE, Judge, and HANSON, Judge.

## OPINION

HANSON, Judge.

In this marital dissolution action, appellant-husband argues that the district court's property division should be reversed because it (a) uses the trial date as the marital property valuation date, (b) includes in the marital estate the benefits of his employment-separation agreement that was signed after the valuation date, (c) fails to adjust for the tax consequences of his employment-separation benefits and his retirement assets, and (d) does not distribute in kind certain investment assets that had suffered a substantial decline in value during the proceedings. In addition, husband argues that the district court abused it's discretion in determining spousal maintenance by amending a finding of fact on husband's monthly expenses without amending a corresponding conclusion of law that impacted his maintenance obligation. We affirm.

## FACTS

Appellant-husband Frederick J. Grigsby, Jr. and respondent-wife Cheryl Pete Grigsby were married for more than fifteen years. In 1998, husband accepted a new job as a human resources executive in California, negotiating an employment agreement that included a provision for severance pay in the event of his involuntary termination. After he moved to California, wife filed a dissolution petition.

On September 25, 2000, the dissolution trial commenced before a special magistrate. At that time, husband intended to resign from his employment position and was negotiating an alternative employment-separation agreement with his employer. Husband did not disclose these negotiations at the trial. Husband resigned effective October 31, 2000. His employment-separation agreement, denominated as a "Settlement and Release Agreement," was signed by husband on October 19, 2000. It contained a variety of terms, including a noncompete clause and a waiver of all employment-related claims against his employer. The agreement, as a whole, was valued at about $1,800,000.

On November 21, 2000, the magistrate reopened the record to take additional evidence with respect to the employment-separation agreement. On May 10, 2001, the district court adopted the magistrate's proposed dissolution judgment that set the marital property valuation date at June 29, 2000, the date of a scheduled pretrial conference, and treated the benefits of husband's employment-separation agreement entirely as marital property. Husband moved to amend the judgment or for a new trial, contending that the employment-separation agreement was made after the valuation date and all benefits should be treated as nonmarital property. On October 24, 2001, the magistrate recommended and the district court ordered the amendment of the judgment to change the valuation date to the later date of the opening of trial on September 25, 2000, and confirmed that all of the benefits of husband's employment-separation agreement were marital property. This appeal followed.

## ISSUES

1. Did the district court abuse its discretion by changing the marital property valuation date to the first day of trial?

2. Did the district court err by finding that the benefits of the employment-separation agreement, signed after the valuation date, were marital property?

3. Did the district court make appropriate adjustments for the tax consequences of the benefits of the husband's employment-separation agreement and of his retirement assets?

4. Did the district court abuse its discretion by failing to redistribute in kind two stock accounts?

5. Did the district court abuse its discretion by not amending a conclusion of law with respect to maintenance after it amended a finding of fact regarding husband's expenses?

## ANALYSIS

"District courts have broad discretion over the division of marital property, and we will not disturb the division on appeal absent a clear abuse of discretion." *Chamberlain v. Chamberlain*, 615 N.W.2d 405, 412 (Minn.App.2000) (citation omitted), *review denied* (Minn. Oct. 25, 2000). To conclude that the district court abused its discretion, the district court's factual findings must be "against logic and the facts on [the] record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984) (citation omitted). We will affirm the district

court's division of property "if it had an acceptable basis in fact and principle." *Servin v. Servin,* 345 N.W.2d 754, 758 (Minn.1984) (citations omitted).

## I

Husband argues that the district court improperly changed the marital property valuation date from the date of a scheduled pretrial conference to the date that trial commenced, in part to include in marital property the benefits he received under the employment-separation agreement.

■■■■ Minnesota law requires the district court to make a "just and equitable" division of marital property, after considering all relevant factors, including those listed in Minn.Stat. § 518.58, subd. 1 (2000). "Marital property" is defined as

property, real or personal, * * * acquired by the parties, or either of them, * * * at any time during the existence of the marriage relation between them, * * * but prior to the date of valuation under section 518.58, subdivision 1.

Minn.Stat. § 518.54, subd. 6 (2000). The valuation date is determined as follows:

The court shall value marital assets for purposes of division between the parties as of the day of the initially scheduled prehearing settlement conference, unless a different date is agreed upon by the parties, or *unless the court makes specific findings that another date of valuation is fair and equitable.*

Minn.Stat. § 518.58, subd. 1 (emphasis added). The district court has broad discretion in setting the marital property val-

uation date. *Desrosier v. Desrosier,* 551 N.W.2d 507, 510 (Minn.App.1996).

Originally, the district court determined that June 29, 2000, should be the valuation date, because the court presumed that it was the date when the first "pretrial conference" occurred. When it made that determination, the district court also found that husband had not been candid with the court when he discussed his employment status during the September trial, and that husband was actually negotiating a separation package with his employer at the time of trial. The court found that husband had a duty to disclose these negotiations, which resulted in husband acquiring $1,800,000 an amount more than double the parties' previous estate.

In his motion for amended findings and conclusions, husband argued that the valuation date should be even earlier, proposing December 14, 1999, as the date a pretrial conference was originally scheduled but not held. In its order to amend the judgment, the district court rejected that date and also rejected the June 29, 2000, date previously used. The court specifically found that no "pretrial conference" was ever held in this case and concluded that it was appropriate to use the trial date of September 25, 2000, as the valuation date.[1]

Because the district court made specific findings that explained its rationale for using the trial date as the valuation date, and because those findings are not clearly erroneous on this record, we hold that the district court did not abuse its discretion in setting the marital property valuation date.

---

1. In an unpublished decision, we have held that it is appropriate to use the trial date as the valuation date, so long as the district court makes findings supporting its decision. *Skoglund v. Skoglund,* No. C0–91–561, 1991 WL 191655, at *1–2 (Minn.App. Oct.1, 1991) (affirming the use of the trial date as the valuation date where district court made spe-

cific finding that such a date was the most equitable valuation date and the selection of such a date was reasonable and supported by the evidence); *but see Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn.App.1993) (holding that unpublished opinions are, "[a]t best," of persuasive value).

## II

Husband argues that the district court improperly characterized the benefits of his employment-separation agreement as marital property because (1) the benefits were acquired under the October 2000 separation agreement and did not accrue under his 1998 employment agreement, (2) the October 2000 separation agreement was signed after the valuation date, and (3) in any event, the benefits are nonmarital because they are intended to replace husband's income from his postdissolution employment. This argument requires us to first determine what general approach the district court should use to determine whether the benefits of an employment-separation agreement are marital or nonmarital property.

### Mechanical vs. Analytic Approach

In the absence of specific legislative direction, courts have taken one of two basic approaches to the classification of intangible property rights obtained by a spouse through the settlement of a cause of action. John DeWitt Gregory, *The Law of Equitable Distribution*, ¶ 3.03[1] (1989); J. Thomas Oldham, *Divorce, Separation & The Distribution of Property* § 8.01[1] (2000); Grace Ganz Blumberg, *Intangible Assets Recognition and Valuation, in 2 Valuation & Distribution of Marital Property* § 23.08[1][a] (1998). The first is the "mechanical" approach, which relies primarily on the general statutory definitions of marital and nonmarital property to determine when the benefits were "acquired." If acquired during the marriage and before the valuation date, the benefits are classified entirely as marital. Gregory, *supra*, at ¶ 3.03[1][3]; Oldham, *supra*, at § 8.01[1]; Blumberg, *supra*, at § 23.08[1][c]. The second is the "analytical" approach, which focuses on the purpose of each component of the settlement. To the extent that the settlement is intended to compensate the spouse for labor rendered during the marriage, it is considered marital, and to the extent it is intended to replace earnings from postdissolution labor, it is considered nonmarital. Gregory, *supra*, at ¶ 3.03[1], [2]; Oldham, *supra*, at § 8.01[1]; Blumberg, *supra*, at § 23.08[1][b].

Although there are no published Minnesota decisions dealing specifically with the benefits of employment-separation agreements,[2] we can obtain some guidance from Minnesota decisions dealing with the classification of analogous settlement agreements. These cases appear to predominantly follow the analytical approach.

Thus, in *Sweere v. Gilbert–Sweere*, 534 N.W.2d 294, 300–01 (Minn.App.1995), we

---

**2.** There are two unpublished decisions involving employment settlements, but they do not develop a generally applicable approach. In *Carr v. Carr*, No. C0–91–2312, 1992 WL 72034 (Minn.App. April 14, 1992), *review denied* (Minn. June 1, 1992), husband did not disclose to the dissolution court that he had terminated his employment and received severance pay equal to about half the marital estate. We affirmed the district court's decision to reopen the decree and to amend the property division to award wife half of the severance pay. We rejected husband's argument that his severance pay should be treated as income, not marital property, by a mechanistic interpretation of the statutory definition of "income" as requiring "periodic payment," whereas the severance was paid in a lump sum. *Id.* at *2. In *Sommers v. Sommers*, No. C7–97–98, 1997 WL 328035 (Minn.App. June 17, 1997), *review denied* (Minn. August 21, 1997), husband received $550,000 of severance pay and $80,000 for a non-compete agreement when his employment was terminated during the marriage. No challenge was made to the district court's treatment of the severance pay as a marital asset, and thus we did not address the issue. Our review of the noncompete payment, however, reflected the analytical approach, concluding that a noncompete payment could be nonmarital if it was "a method for limiting future employment and income." *Id.* at *2.

examined the classification of payments made to the husband under a noncompete agreement as nonmarital property. Without specific identification of the approach, we essentially applied the analytical approach. We recognized that one purpose of a noncompete agreement may be to restrict the post-marital employment of a spouse and that it would be "improper to value a marital asset using any method that gives one spouse a forced share of the other spouse's income from postmarital employment." *Id.* at 297. But we also recognized that another purpose of a noncompete agreement may be to provide a protective device to assure the value of an employer's goodwill. We remanded the matter to the district court with instructions that only that portion of the noncompete payments that "compensates the spouse for restricting post-marital personal service" can be treated as nonmarital property. *Id.* at 300–01 (discussing *Rogers v. Rogers,* 296 N.W.2d 849, 853 (Minn. 1980) (holding that the marital portion of the proceeds of the sale of a business is limited to the value that is not dependent upon the spouse's continued services)); and *Lowe v. Lowe,* 372 N.W.2d 65, 67 (Minn.App.1985) (affirming the valuation of wife's business without the assumption that wife would sign a noncompete agreement because such an agreement would substantially deprive wife of her future livelihood).

Similarly, in *Van de Loo v. Van de Loo,* 346 N.W.2d 173 (Minn.App.1984), we applied the analytical approach to a question whether monies received by a spouse in settlement of a personal injury claim should be considered marital property. After examining the split of authority among other jurisdictions, we held that the classification of such a settlement depends upon "the purpose of the recovery rather than the timing of the recovery * * *." *Id.* at 176. We recognized that this approach permitted separate treatment of the various components of the settlement. *Id.* To the extent the recovery is the restoration of the physical or mental health that a spouse brought to the marriage, it is nonmarital. *Id.* To the extent the recovery is compensation for lost wages or medical expenses, which have diminished the marital estate, it is marital. *Id. See also Ward v. Ward,* 453 N.W.2d 729, 732 (Minn. App.1990) (holding that the recovery for noneconomic damages, such as pain and suffering, and for future economic damages, such as future wage losses, future loss of earning capacity or future medical expenses, are nonmarital), *review denied* (Minn. June 6, 1990); *Hafner v. Hafner,* 406 N.W.2d 590, 593 (Minn.App.1987) (holding that worker's compensation award is marital to the extent it was received for lost wages but nonmarital if it compensates for loss of good health). *But see VanderLeest v. VanderLeest,* 352 N.W.2d 54, 57 (Minn.App.1984), (holding that a disability annuity is marital property because the rights to receive it arose from the labor performed by the spouse during the marriage).

*Property Right Acquired before the Valuation Date*

■ We next consider whether the benefits received by husband under his employment-separation agreement were "acquired * * * prior to the date of valuation," as required by the definition of marital property under Minn.Stat. § 518.58, subd. 1. Under the analytical approach, the question whether benefits obtained through an employment-separation agreement are marital or nonmarital should not turn simply on the date that the agreement was signed, but requires a more detailed review of the elements of the agreement to determine their individual sources. Those that can be traced primarily to the spouse's marital employment should be considered as having been acquired during the marriage.

Moreover, there would be a public policy concern with allowing the date of the agreement to control because the spouse who is proposing that the agreement be treated as nonmarital may simply delay the execution of the agreement until after the valuation date. The facts of this case provide a good illustration of that concern. As the district court found, at the time of the September 2000 trial, husband had already resigned his position, his resignation had been announced internally by his employer and he was negotiating his severance package. In fact, the district court found that husband had prepared the first draft of the severance agreement. For these reasons, it would be inappropriate to allow the date of the execution of the agreement to control its classification as marital or nonmarital.

We conclude that husband's separation agreement is significantly connected to his marital employment. From a general viewpoint, husband was in a position to seek the benefits of the agreement only because of his employment status, which commenced during the marriage in 1998. Looking at the specific elements of the agreement, the dominant feature is husband's release of his employer from all claims arising from his employment during the marriage. Thus, husband releases his employer from claims based on the "offer letter" of October 8, 1998; on the husband's "employment with the company"; on "age discrimination in employment"; on "race discrimination in employment"; on "disability discrimination"; and on violation of laws requiring equal pay for equal work during employment. Payments made for the release of each of these claims would stem from husband's marital employment and, at least in part, would represent compensation for injuries that allegedly occurred during the marital labor and that presumably diminished the marital estate.

While it is true that some of these claims could also give rise to damages for injuries that are nonmarital in nature (such as for pain and suffering, emotional distress or loss of future earnings or earning capacity), and the agreement releases other claims that likewise could support future damages (such as claims for wrongful discharge), we are satisfied that, on this record, the agreement is significantly connected to husband's marital employment and, accordingly, that the district court did not abuse its discretion when it determined that the rights obtained by husband under the agreement had been "acquired" before the valuation date.

*Burden of Proof*

Having determined that husband acquired rights under the employment-separation agreement prior to the valuation date, the statutory presumption becomes applicable. Under Minn.Stat. § 518.54, subd. 5 (2000), all real or personal property acquired by the parties during their marriage and before the valuation date is presumed to be marital. *See also Merrick v. Merrick,* 440 N.W.2d 142, 146 (Minn.App.1989) (stating that the party who seeks to claim that an asset acquired during the marriage is nonmarital has the burden of proof). More specifically, in applying the analytical approach to determine whether property acquired during the marriage is marital or nonmarital, the party seeking a nonmarital classification has the burden of proving that the purpose for the recovery was nonmarital in nature. *See, e.g., Hafner,* 406 N.W.2d at 593–94; *Van de Loo,* 346 N.W.2d at 177. As we noted in *Van de Loo,* "[a]bsent such proof, the proceeds recovered for any injury occurring during the marriage will all be treated as marital property." *Van de Loo,* 346 N.W.2d at 177.

*Release of Employment–Related Claims*

 Turning specifically to the elements of the employment-separation agreement, the district court should use the analytical approach to examine each of the released claims to determine whether the purpose for the payments made as to each was marital or nonmarital in nature. The record before the district court in this case contains only the employment-separation agreement and slight testimony describing the negotiations of the agreement. Husband did not provide any evidence to show the specific circumstances underlying each of the released claims, or evidence from which to determine the value of any one of them. More importantly, there was no testimony as to how the parties to the employment-separation agreement allocated the payments among the released claims. While the allocation of the parties might not be controlling, in the absence of any testimony concerning their allocation, the district court has no logical basis on which to make an apportionment of the benefits as between marital and nonmarital property.

We would agree with husband that at least some of the payments called for under the employment-separation agreement potentially involve compensation of a nonmarital interest, such as for pain and suffering, emotional distress or the loss of income from postdissolution labor. But husband had the burden of proving what part was nonmarital. Husband did not provide evidence to show under what circumstances he could have brought these potential claims, which of the claims would have sought compensation for nonmarital injury, or even how the total payment he received should be allocated to his release of these claims. Because husband presented insufficient evidence to satisfy his burden of proving which part of his employment separation benefits were nonmarital, or any rational basis for apportioning the benefits between marital and nonmarital property, we affirm the district court's determination that the proceeds attributable to his release of these claims must all be treated as marital property.

*Noncompete/Nonsolicitation Clauses*

In addition to the release of employment-related claims, the employment-separation agreement also contains noncompete and nonsolicitation clauses. Thus, husband agreed that he would not provide services competitive with his employer for a period ending January 2, 2001. Further, husband agreed to keep secret all confidential information he had acquired during his employment and, for a period of two years from the date of the agreement, that he would not solicit other employees of his employer.

 As discussed earlier, Minnesota cases have addressed the proper classification of noncompete agreements as between marital and nonmarital property. In *Sweere,* we determined that payments made pursuant to a noncompete agreement may be considered nonmarital only to the extent that they actually restrict future income or employment. *Sweere,* 534 N.W.2d at 300–01. There, we set forth several factors to consider in evaluating a noncompete agreement. *Id.* at 300. Those factors are also relevant to an attempt to allocate undesignated benefits from the employment-separation agreement to the noncompete clause. We said that the court should consider:

(1) the parties' intent; (2) whether the parties' tax treatment of the payment was in accordance with their stated intent; (3) whether the compensation paid for the covenant can be separated from the price paid for the goodwill; and (4) whether the non-competition agreement is economically real.

As to economic reality, we suggested further criteria:

[T]he court could consider whether [the spouse] represented a competitive threat to [the employer]; whether the agreement was the product of arms-length dealings; whether the agreement played a meaningful role in the negotiations; and whether the agreement was enforceable.

*Id.* While not all of these factors are applicable to the present case, the absence of specific evidence addressing any one of these factors resulted in husband's failure to satisfy his burden of proof.

■ The district court found that the noncompete agreement did not meaningfully restrict husband's future ability to earn income because it was very limited in duration and husband found employment within eight months after his employment separation. In addition, there is no evidence to support a finding that husband's noncompete agreement was economically real. The district court did not abuse its discretion in refusing to allocate some portion of the proceeds of the employment-separation agreement to the noncompete agreement.

■ Similarly, there was no evidence that the nonsolicitation clause truly limited husband's right to seek future employment. While husband argues that it disqualified him from one potential line of work, as a headhunter for an employment firm, there is no evidence of the likelihood of husband obtaining such employment, nor of the impact of the non-solicitation clause on husband seeking such employment. Absent this testimony, the district court did not abuse its discretion in refusing to allocate some portion of the proceeds of the employment-separation agreement to the nonsolicitation clause.

## III

■ Husband argues that the district court failed to take judicial notice of the tax code and failed to make adjustment for the tax consequences of both the employment separation benefits and his retirement assets. Generally, it is within the district court's discretion to consider the tax consequences of a distribution. *O'Brien v. O'Brien,* 343 N.W.2d 850, 854 (Minn.1984). But the district court should not consider tax consequences of its property division when to do so would force it to speculate. *Miller v. Miller,* 352 N.W.2d 738, 744 (Minn.1984).

### Employment–Separation Benefits

Husband argues that the district court failed to make any adjustment for the tax consequences of his employment-separation benefits when distributing a portion of them to wife. However, a close reading of the district court's dissolution judgment shows that it distributed to wife only her share of the after-tax cash proceeds of the agreement.

■ This was accomplished by awarding wife portions of husband's Bank of America account, to which he had deposited settlement payments that were already net of taxes. The court found that husband put approximately $640,000 from the settlement into his Bank of America account. Of this amount, $521,630 represented the net after-tax portion of a lump sum payment made to husband. The district court awarded wife, from that account, the sum of $57,550, (representing one-half of the payments husband received under the agreement for the 1999 long-term incentives, the redemption of stock, and husband's unused time-off-with-pay balance). From the balance that remained, the district court allowed husband to withdraw his living expenses and child support and spousal maintenance payments for six months. The court then granted wife one-half of the final balance, estimated to be about $220,000. This is about $40,000 less than one-half of the

original after-tax amount of $521,630. This method reflected appropriate consideration of the tax consequences of the employment-separation agreement and was not an abuse of discretion.

*Retirement Assets*

■ In husband's motion to amend, he only made two brief references to tax liability. He argued that certain retirement benefits were nonmarital property but that if the district court would not exclude them, he wanted the court "in the alternative," to reduce their value "by the income tax liability" attributable to them or incurred as a result of them. Husband presented no further analysis or evidence to the district court. Husband did not provide any legal authority for this argument.

We initially note that an issue first raised in a post-trial motion is not raised in a timely fashion. *See, e.g., Antonson v. Ekvall,* 289 Minn. 536, 186 N.W.2d 187, 189 (1971) (stating claim made "too late" when made for the first time in a motion for a new trial); *Allen v. Central Motors,* 204 Minn. 295, 299, 283 N.W. 490, 492 (1939) (stating issue raised "too late" when first raised in motion for amended findings). Moreover, husband argues on appeal that *Maurer v. Maurer,* 623 N.W.2d 604 (Minn. 2001) requires the district court to consider the issue of tax liability on his pension interests. But *Maurer* simply affirmed that the district court had discretion to consider tax consequences in the appropriate case, and confirmed the general rule that the district court should not consider tax consequences when to do so would be speculative. *Id.* at 607–08.

Because, on this record, it would have been speculative for the district court to address the future tax consequences that might occur with respect to husband's retirement assets, the district court did not abuse its discretion by not addressing this issue.

## IV

■ Husband argues that the district court erred by not dividing certain stock accounts in kind. In his motion before the district court, husband included draft language for the judgment, but provided no evidence or legal authority to show why such a division would be appropriate. Likewise, husband has not provided any authority to this court and it is not obvious that the district court prejudicially erred in its treatment of the accounts. Accordingly, husband has waived his argument on this issue and we do not address it. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts generally will not consider matters not argued to and considered by the district court); *State v. Modern Recycling, Inc.,* 558 N.W.2d 770, 772 (Minn.App.1997) (stating that assignment of error based on "mere assertion" and not supported by argument or authority is waived "unless prejudicial error is obvious on mere inspection").

## V

■ Husband argues that the district court erred by not amending a conclusion of law concerning his maintenance obligation after it amended a factual finding on his living expenses. Husband did not make this argument to the district court. Further, he provides no authority to this court to support his argument. Accordingly, husband has waived his argument on this issue and we do not address it. *See Thiele,* 425 N.W.2d at 582; *Modern Recycling,* 558 N.W.2d at 772.

## DECISION

The district court did not abuse its discretion by setting September 25, 2000, as the valuation date. The district court properly included the employment-separation benefits in the marital estate, because husband did not meet his burden of proving what part of them was nonmarital

property. The district court properly considered the tax consequences of the employment-separation agreement and properly declined to speculate about the potential tax consequences of husband's retirement assets. Husband waived his arguments that the district court erred by its distribution of the investment accounts and by not modifying his maintenance obligation.

**Affirmed.**