BJORKMAN, Judge
Appellants challenge the district court's grant of a buy-out of respondent's business interests, valuation of the interests, removal of a trustee, and denial of appellant trustees' motion for attorney fees and costs. By cross-appeal, respondent/cross-appellant challenges the district court's grant of summary judgment on her breach-of-fiduciary-duty claims against appellant trustees, denial of her request to remove a second trustee, and determination of the valuation date for the buy-out of her interests. We affirm all rulings except the district court's denial of appellant trustees' motion seeking reimbursement of their attorney fees and costs from applicable trusts. On this issue, we remand to the district court for reconsideration of the motion under the correct legal standard.
FACTS
This appeal arises from decades-long friction among the Lund siblings, grandchildren of grocery-chain founder Russell T. Lund Sr., over one sibling's desire to divest her various trusts of interests in three privately held Lund family business entities. Like her three siblings, respondent Kim A. Lund (Kim[1] ) is an indirect *278 25% owner, through certain trusts, of appellants Lunds, Inc., Lund Food Holdings, Inc. (LFHI), and Lund Real Estate Holdings, LLC (LREH) (together, the Lund entities). Appellant Russell T. Lund III (Tres) is the Lund entities' chairman, president, and CEO. He is the only one of the four Lund siblings who is actively involved in running the family businesses.
In December 2014, Kim commenced this litigation against appellants Tres, the Lund entities, trustee Stanley Rein, and directors Gene Gerke and Mitch Avery, alleging breach of fiduciary duty, unfairly prejudicial conduct under Minn. Stat. §§ 302A.751, 322B.833,[2] and civil conspiracy. She sought damages, a buy-out of her interests or alternatively the sale of the Lund entities, removal of Tres and Rein as trustees of her trusts,[3] attorney fees, expenses, and other relief.
In July 2016, Kim filed a buy-out motion under Minn. Stat. § 302A.751 and Minn. Stat. § 322B.833,[4] and appellants moved for summary judgment. The district court held a hearing on these and other motions in August. In an order filed on October 4, the district court granted Kim's buy-out motion, denied appellants' summary-judgment motion on Kim's unfairly-prejudicial-conduct and equitable-relief claims; and granted appellants' summary-judgment motion on Kim's breach-of-fiduciary-duty and civil-conspiracy claims. The district court denied appellants' request to file a motion to reconsider the October 4 order.
After another hearing, the district court set the valuation date for Kim's interests as October 2, 2016, the close of the Lund entities' 2016 fiscal year. When the parties failed to agree on fair value and other buy-out terms within the statutory time period, the district court held a weeklong court trial on these terms and Kim's trustee-removal claims. The district court ultimately determined the fair value of the Lund entities was $191.5 million on October 2, 2016, and the fair value of the interests held by Kim's trusts was $45.2 million.[5] The district court granted Kim's request to remove Tres as trustee of her Russ Jr. and Canadian Oil trusts, but denied Kim's request to remove Rein as trustee of her Canadian Oil trusts. Tres and Rein filed a motion for trustees' attorney fees and costs, which the district court denied. This appeal follows.
*279 ISSUES
I. Did the district court abuse its discretion in granting a buy-out under Minn. Stat. §§ 302A.751, 322B.833 ?
II. Did the district court abuse its discretion in setting the valuation date or in determining fair value?
III. Did the district court err in determining Kim's breach-of-fiduciary-duty claims against appellant trustees fail as a matter of law?
IV. Did the district court abuse its discretion in granting in part and denying in part Kim's trustee-removal claims?
V. Did the district court err in concluding the common-law standard for an award of trustees' attorney fees and costs is superseded by Minn. Stat. § 501C.1004 (2018)?
ANALYSIS
I. The district court did not abuse its discretion by granting a buy-out under Minn. Stat. §§ 302A.751, 322B.833.
Appellants' primary argument on appeal is that the district court erred as a matter of law in granting Kim's buy-out motion. They contend a decision on a buy-out motion is akin to summary judgment or a directed verdict and therefore subject to de novo review. Kim argues the proper standard of review is abuse of discretion because a buy-out is an equitable remedy. Both are correct in part.
Under both the MBCA and the MLLCA, a district court "may grant any equitable relief it [finds] just and reasonable in the circumstances" if individuals in control of the corporation or LLC have acted "in a manner unfairly prejudicial" toward another shareholder or member. Minn. Stat. §§ 302A.751, subd. 1(b)(3), 322B.833, subd. 1(2)(ii).[6] Available equitable relief includes a buy-out of the plaintiff's interests by the business entity. Minn. Stat. §§ 302A.751, subd. 2 (closely held corporation), 322B.833, subd. 2 (limited liability company). Appellate courts generally review a district court's grant of equitable relief for abuse of discretion. Melrose Gates, LLC v. Moua , 875 N.W.2d 814, 819 (Minn. 2016).
The district court concluded it is appropriate to grant a buy-out on motion if the record reflects at least one uncontroverted incident of unfairly prejudicial conduct. We agree and hold that, in the absence of a genuine issue of material fact as to whether unfairly prejudicial conduct occurred, a district court may, without conducting an evidentiary hearing, exercise its broad equitable authority to grant a buy-out under Minn. Stat. §§ 302A.751, 322B.833. Accordingly, we consider whether the district court (1) erred by concluding it was appropriate to decide Kim's buy-out request on motion and (2) abused its discretion by granting the buy-out remedy.
A. There is no genuine issue of material fact as to whether appellants frustrated Kim's reasonable expectations of liquidity and financial independence.
Unfairly prejudicial conduct under Minn. Stat. § 302A.751 includes conduct that violates or frustrates the reasonable expectations of a minority *280 shareholder. U.S. Bank N.A. v. Cold Spring Granite Co. , 802 N.W.2d 363, 366, 378 (Minn. 2011). The term "unfairly prejudicial" is liberally construed. See id. at 377 ; see also McCallum v. Rosen's Diversified, Inc. , 153 F.3d 701, 703 (8th Cir. 1998).
In determining whether to order ... a buy-out, the court shall take into consideration the duty which all shareholders in a closely held corporation owe one another to act in an honest, fair, and reasonable manner in the operation of the corporation and the reasonable expectations of all shareholders as they exist at the inception and develop during the course of the shareholders' relationship with the corporation and with each other.
Minn. Stat. § 302A.751, subd. 3a.
As an initial matter, we observe that appellants mischaracterize the district court's expression of Kim's reasonable expectation as a buy-out at an undiscounted price. The district court repeatedly identified Kim's reasonable expectations as "liquidity and independence," "increased liquidity and financial independence," "that her assets be separated from the family business," "independence and liquidity, at a fair price," and "financial liquidity and independence." Indeed, the district court rejected the notion that Kim could reasonably expect an undiscounted price, stating, "the 'fair value' that Kim seeks-i.e. undiscounted pro rata share of the entities-is not a given under the law" and "[n]othing in this memorandum is intended to suggest that Kim is per se entitled to an undiscounted buyout of her shares."
"[A]ny written agreements, including ... buy-sell agreements ... are presumed to reflect the parties' reasonable expectations concerning matters dealt with in the agreements." Minn. Stat. § 302A.751, subd. 3a. But written agreements are not dispositive of expectations in all circumstances. Gunderson v. All. of Computer Prof'ls., Inc. , 628 N.W.2d 173, 186 (Minn. App. 2001) ; Berreman v. W. Pub. Co. , 615 N.W.2d 362, 374 (Minn. App. 2000), review denied (Minn. Sept. 25, 2000). The district court concluded:
In this case, the words, conduct, and history of the parties shed more light on Kim's reasonable expectations than do the trust and corporate governance documents. Tres, in particular, as well as [V.M.], in his role as Chief Administrative Officer, Secretary, and Treasurer of the Lund Entities, have continuously contributed to Kim's belief that an exit strategy was in the works, wherein she would gain liquidity and financial independence from the Lund Entities.
The district court identified 14 documents dating back to 1992, which evidence Kim's desire for an "exit strategy" and the parties' common understanding that planning was underway or would soon commence to fulfill it. Appellants do not challenge the district court's characterization of the 14 documents, but contend that Kim's expectations were nevertheless unreasonable as a matter of law because they conflict with transfer-restriction agreements (TRAs), trust instruments, bylaws, and the MBCA. We disagree.
It is undisputed that the TRAs prohibit transfers of interests in the Lund entities except "to a Permitted Transferee without consideration ("Gratuitous Transfer "), or ... [if] the Remaining Shareholders approve the Transfer by unanimous written consent." Appellants argue this language prohibits Kim from selling her interests, thus making her expectation of liquidity unreasonable. We are not persuaded. Because the TRAs authorize a sale of interests with unanimous written consent, a determination whether it was reasonable for Kim to expect liquidity necessarily involves *281 an assessment of communications among the Lund siblings and cannot be resolved solely through review of the TRAs. Similarly, because distribution of trust principal is not barred by the trust instruments, and transfers are not prohibited by the corporate bylaws, the language of the instruments and bylaws is not dispositive of whether an expectation of liquidity was unreasonable.
Appellants contend nothing in the MBCA or related statutes confers an expectation of liquidity because the dominant characteristic of a closely held business is the lack of a public market for its shares. But nothing in the MBCA suggests that a corporation cannot buy shares from its shareholders. See Cold Spring Granite , 802 N.W.2d at 379 (analyzing claim of unfairly prejudicial conduct arising from reverse stock split); Gunderson , 628 N.W.2d at 184 (analyzing claim of unfairly prejudicial conduct related to involuntary-dismissal clause in buy-sell agreement); Berreman , 615 N.W.2d at 373 (analyzing claim of unfairly prejudicial conduct related to buy-back agreement). And the district court's determination of Kim's expectations was based on the decades-long conduct of the parties, not construction of the MBCA.
In the alternative, appellants argue genuine issues of material fact preclude a determination of the reasonableness of Kim's expectations. But they cite no evidence in the record to support a conclusion that there is a genuine issue of material fact as to Kim's expectation of liquidity, as contrasted with liquidity at undiscounted value. The undisputed facts support the district court's determination that Kim reasonably expected liquidity and financial independence.
The district court identified three acts or omissions that frustrated Kim's reasonable expectations. We address only the third, as it resolves our inquiry. The district court determined that appellants frustrated Kim's expectation of liquidity by failing for two decades to propose a divestiture plan or explain their failure to do so. Appellants concede that Kim's desire for an "exit strategy" was communicated as early as 1994, and discussions about structuring the process were underway by 1995. Although specific terms were never finalized, appellants continued for decades to assure Kim it would happen.
Appellants contend a partial ($8 million) redemption plan offered in 2008-and the possibility of similar future redemptions-demonstrate a genuine issue of material fact with respect to frustration. We disagree. Offering a single, partial redemption over a 20-year period when all parties understood that Kim would achieve complete liquidity established frustration of her reasonable expectations as a matter of law. Indeed, appellants' consistent position since the litigation began in 2014 has been that Kim cannot liquidate her interests because her siblings do not consent. On this record, appellants have not demonstrated a genuine issue of material fact whether Kim's reasonable expectations of liquidity and financial independence were frustrated.
B. The district court did not abuse its discretion in granting a buy-out.
Minority shareholders "are in a vulnerable position," and Minn. Stat. § 302A.751"provides the flexibility for a trial judge to exercise a broad grant of equitable authority." Pedro v. Pedro , 463 N.W.2d 285, 288 (Minn. App. 1990) (citing Joseph Edward Olson, Statutory Changes Improve Position of Minority Shareholders in Closely Held Corporations , Hennepin Lawyer, Sept.-Oct. 1983, at 10), review denied (Minn. Jan. 24, 1991). The flexibility *282 of the statute makes it possible for courts to grant relief without "depriving the community of a viable business." Joseph Edward Olson, A Statutory Elixir for the Oppression Malady , 36 Mercer L. Rev. 627, 643 (1985).
The district court determined that Kim was in a particularly vulnerable position as a minority shareholder who lacked management rights and had no hand in creating the trust instruments or corporate-governance documents. It noted the increasing acrimony between Kim and her siblings and pressing needs for estate and corporate planning. It also recognized the success of the Lund entities and the risk of an undue burden on them or an unfair wealth transfer to Kim. The district court noted the critical need to structure a buyout that would be fair and equitable to all parties. After trial, the district court carefully crafted a buy-out order consistent with this statutory obligation. See Minn. Stat. §§ 302A.751, subd. 2, 322B.833, subd. 2. The terms of the ordered buy-out require a 5% cash down payment within 90 days and issuance of subordinated, unsecured promissory notes to the trusts for the remainder, payable over 20 years, with 2.75% annual interest and deferment features to protect the Lund entities' cash flow.
Appellants argue that affirming the district court's grant of a buy-out would set a dangerous precedent. They contend that an affirmance would discourage close corporations from accommodating or even discussing a shareholder's request, because any consideration could later be found to establish the shareholder's reasonable expectations. We are not persuaded. A district court is in the best position to evaluate and balance the equities on the record before it. Under the circumstances of this case, the district court did not abuse its discretion in granting a buy-out of Kim's interests as an equitable remedy for unfairly prejudicial conduct.
II. The district court did not abuse its discretion in setting the valuation date or in determining fair value.
A. The district court did not abuse its discretion in setting the valuation date as October 2, 2016, the close of the Lund entities' fiscal year.
When a buy-out motion is granted, "The purchase price of any shares so sold shall be the fair value of the shares as of the date of the commencement of the action or as of another date found equitable by the court ." Minn. Stat. § 302A.751, subd. 2 (emphasis added). Kim commenced this action on December 1, 2014, and the district court granted Kim's buy-out motion on October 4, 2016.
The district court noted the length of the litigation, the "dynamic and evolving" Twin Cities retail grocery industry, the absence of a triggering event (such as job loss) to impact Kim's cash flow, and the availability of regular, audited financial statements. Having determined the commencement of litigation had no bearing on the proper valuation date, the district court selected a date based on the near-term availability of annual audited financial statements for the Lund entities. The district court noted the lack of similarly reliable financial data in reported Minnesota buy-out cases.
Kim does not directly challenge the district court's factual findings or its reasoning; she argues the valuation date prejudiced her by complicating trial preparations and lowering the value of her interests. In another context, we rejected similar arguments. See Grigsby v. Grigsby , 648 N.W.2d 716, 720 (Minn. App. 2002) (reviewing district court's valuation *283 date for marital property under statute setting date as initially scheduled prehearing settlement conference or stipulated date "unless the court makes specific findings that another date of valuation is fair and equitable"). In Grigsby , we concluded the district court did not abuse its discretion in setting the valuation date as the date of trial, which resulted in the inclusion of employment-separation benefits, because the district court made specific findings explaining its rationale. Id. Unlike the statute at issue in Grigsby , Minn. Stat. § 302A.751, subd. 2, does not require specific findings to depart from the default commencement-of-litigation valuation date. The district court nevertheless meticulously explained its reasoning, and its factual findings are not clearly erroneous. See Melrose Gates , 875 N.W.2d at 819 (stating appellate courts "give deference to a district court's equitable determinations because the court acts like a fact-finder"). The district court did not abuse its discretion by departing from the default valuation date and selecting the close of the Lund entities' fiscal year.
B. The district court did not abuse its discretion in determining fair value.
When a buy-out is ordered by the court, "[t]he purchase price of any shares so sold shall be the fair value of the shares." Minn. Stat. § 302A.751, subd. 2. "Fair value" generally means undiscounted value. Advanced Commc'n Design, Inc. v. Follett , 615 N.W.2d 285, 292 (Minn. 2000) (holding "fair value" generally means "pro rata share of the value of the corporation as a going concern without discount for lack of marketability," but applying marketability discount under "extraordinary circumstances" presented). The district court "has broad discretion both in the process and the ultimate determination of the 'fair value' of the shares to be sold." Id. at 290.
Appellants challenge the district court's valuation of Kim's interests at $45.2 million, arguing that because appellants cannot recreate the district court's calculations, the district court must have abused its discretion. Appellants do not suggest the district court's related findings lack evidentiary support. The district court filed a lengthy order containing numerous undisputed factual findings, credibility determinations, and thorough critiques of the valuation methodologies and opinions offered by the parties' experts. It considered competition in the market, pension liabilities, tax liabilities, and the historic accuracy of the Lund entities' financial forecasting. The district court admitted evidence of income (discounted cash flow (DCF) ), market (guideline public company), and asset-based (adjusted net-asset value) valuation methods, finding that the DCF approach applied by both experts was most appropriate to calculate the value of Lunds, Inc. and LFHI, while the adjusted net-asset-value method applied by appellants' expert was most appropriate for valuing LREH. The district court's $45.2 million valuation falls squarely between the $21.275 million valuation urged by appellants and the $80.4 million valuation sought by Kim.
The district court considered posttrial motions for amended findings, reaffirming its methodology and valuation. It observed that business valuation is an imprecise art and stated that it "based its value determinations on the evidence it deemed most persuasive, all the while minding its obligations to rule in a manner that was fair and equitable to all parties and shareholders." The district court's painstaking efforts are commendable. On this record, we conclude that the district court acted well *284 within its discretion in determining fair value.
III. Kim's breach-of-fiduciary-duty claims against appellant trustees fail as a matter of law.
Trustees owe beneficiaries fiduciary duties of loyalty, full disclosure, and action pursuant to the terms of the trust. In re Revocable Tr. of Margolis , 731 N.W.2d 539, 545-46 (Minn. App. 2007). To prevail on a breach-of-fiduciary-duty claim, a plaintiff must prove four elements: duty, breach, causation, and damages. See TCI Bus. Capital, Inc. v. Five Star Am. Die Casting, LLC , 890 N.W.2d 423, 434 (Minn. App. 2017) (citing Padco, Inc. v. Kinney & Lange , 444 N.W.2d 889, 891 (Minn. App. 1989), review denied (Minn. Nov. 15, 1989) ). The district court determined appellants' unfairly prejudicial conduct did not amount to a breach of fiduciary duty by Tres or Rein, and that Kim offered no evidence of damages due to their trusteeships.
Kim argues there are genuine issues of material fact as to whether Tres and Rein breached their fiduciary duties and whether the trust instruments waived any conflict of interest. But in her principal brief, Kim does not challenge the district court's determination that she offered no evidence of damages. Issues not raised or argued in a principal brief cannot be raised in a reply brief. See Moorhead Econ. Dev. Auth. v. Anda , 789 N.W.2d 860, 887 (Minn. 2010). Accordingly, Kim's reply-brief argument on damages is forfeited for appeal.
A defendant is entitled to summary judgment when, viewing the facts in the light most favorable to the plaintiff, the plaintiff failed to offer evidence sufficient to establish an element of her claim. See Padco , 444 N.W.2d at 891 (affirming grant of summary judgment on legal malpractice claim because plaintiff failed to provide evidence sufficient to establish two elements). Because Kim failed to produce evidence of damages, an essential element of a breach-of-fiduciary-duty claim, we need not reach her arguments with respect to other elements of her claim.
IV. The district court did not abuse its discretion by granting in part and denying in part Kim's trustee-removal claims.
Appellants challenge the removal of Tres as cotrustee of Kim's Canadian Oil Trusts and Russ Jr. Trusts. Kim challenges the denial of her request to remove Rein as a trustee of her Canadian Oil Trusts.
Under the Minnesota Trust Code, Minn. Stat. §§ 501C.0101 -.1304 (2018), a district court "may" remove a trustee if
there has been a substantial change in circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.
Minn. Stat. § 501C.0706(b)(4). We review a district court's decision whether to remove a trustee for abuse of discretion. In re Will of Gershcow , 261 N.W.2d 335, 338 (Minn. 1977). To the extent the parties challenge underlying findings of fact, we do not reconcile conflicting evidence on appeal from a court trial. Porch v. Gen. Motors Acceptance Corp. , 642 N.W.2d 473, 477 (Minn. App. 2002), review denied (Minn. June 26, 2002). Rather, we defer to the district court's factual findings and will not set them aside unless clearly erroneous. Id.
With respect to Tres, the district court found a substantial change in circumstances *285 based on the court-ordered buy-out and the deteriorated relationship between Tres and Kim and her children. In a posttrial order, the district court clarified that Tres's removal was requested by all qualified beneficiaries, best served the interests of all beneficiaries, and was not inconsistent with the material purposes of the trust. Appellants challenge the district court's finding that there has been a substantial change in circumstances. But because the district court also found all qualified beneficiaries requested Tres's removal, which Tres does not dispute, a substantial change in circumstances is not required. See Minn. Stat. § 501C.0706(b)(4). Appellants also argue Tres's removal is inconsistent with the trusts' material purposes. The district court found the trusts' purposes were to provide lifetime benefits to Kim without exposing the assets to taxes after her death. The trustee-succession mechanism relied on by appellants in support of their argument does not inform this purpose. Appellants have not shown the district court clearly erred in its factual findings or abused its discretion in removing Tres.
The district court declined to remove Rein as cotrustee of Kim's Canadian Oil Trusts, which own a small percentage of LFHI, finding the substantial change in circumstance affecting Kim and Tres's relationship does not bear on Rein's trusteeship and his removal was neither in the best interests of the beneficiaries nor consistent with the material purposes of the trusts. The district court found that Rein practiced for nearly 40 years as a trusts-and-estates attorney, served for the last 20 years as trustee of various Lund family trusts, and testified credibly and reliably at trial. The district court further found the court-ordered buy-out
will have significant consequences on the [Lund siblings'] trusts. As the trust structures for the four siblings are identical, it is important to maintain consistent administration of the trusts even as the nature of the assets in Kim's trusts change. Mr. Rein is best equipped to tackle the challenges that lie ahead as the result of this litigation.
Kim argues that she presented overwhelming evidence at trial to support different findings on the statutory factors for removal. But we do not reconcile conflicting evidence on appeal. Porch , 642 N.W.2d at 477. Because record evidence supports the district court's findings that removal factors are not satisfied, we discern no abuse of discretion by the district court in denying Kim's motion to remove Rein.
V. Minn. Stat. § 501C.1004 does not supersede the common-law standard for an award of trustees' attorney fees and costs.
Appellants contend the district court applied the wrong legal standard in denying Tres and Rein's motion to recover nearly $800,000 in attorney fees and costs from Kim's trusts. "Whether the district court applied the correct legal standard presents a question of law, which we review de novo." Am. Bank of St. Paul v. City of Minneapolis , 802 N.W.2d 781, 785 (Minn. App. 2011).
The district court acknowledged the general common-law rule that "a trustee is entitled to reasonable attorneys' fees, to be paid out of the trust estate, incurred in good faith in defending his administration of the trust." In re Freeman's Trust , 247 Minn. 50, 75 N.W.2d 906, 907 (1956). And it observed that the common law supplements the Minnesota Trust Code "except to the extent modified by [the code] or another law of this state." Minn. Stat. § 501C.0106. But the district court concluded the recently adopted Minn. Stat. § 501C.1004 provides a new, explicit standard *286 that supersedes the common law and expands the court's discretionary authority.
Section 501C.1004 provides that, "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party from the trust that is the subject of the judicial proceeding." Applying this section, the district court concluded justice and equity do not require payment of Tres and Rein's attorney fees and costs from Kim's trusts. Having determined section 501C.1004 controlled, the district court did not evaluate good faith, determine whether Tres and Rein incurred their own attorney fees, or assess whether any fees were reasonable.
Appellants argue the district court erred in determining that section 501C.1004 supplants the common law governing a trustee's entitlement to recover fees and costs. We agree. As amicus probate and trust law section of the Minnesota State Bar Association advises, section 501C.1004 governs a beneficiary or third party's ability to recover attorney fees from trust assets. It leaves the common-law standard for trustees-now codified in section 501C.0709-undisturbed. The official commentary to section 1004 of the Uniform Trust Code expressly notes that, "Section 709 authorizes a trustee to recover expenditures properly incurred in the administration of the trust." The intention of the drafters of a uniform act becomes legislative intent upon enactment. In re Butler , 552 N.W.2d 226, 231 (Minn. 1996). We are persuaded that section 501C.1004 's broad application to "any party" involved in trust litigation does not alter long-standing legal principles applicable to trustees. The district court erred in concluding otherwise.
Under Minn. Stat. § 501C.0709(a), "A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for: (1) expenses that were properly incurred in the administration of the trust." This statute echoes the common law, which as noted above, focuses on whether the fees are reasonable and incurred in good faith. Because the district court applied the wrong legal standard, we reverse and remand. We express no opinion on the trustees' entitlement to fees and costs under the correct standard.
DECISION
The district court did not abuse its discretion in granting a buy-out, establishing the valuation date, or determining the fair value of Kim's interests in the Lund entities. And the district court did not err in granting summary judgment to appellant trustees on Kim's breach-of-fiduciary-duty claims. But because the correct legal standard for ruling on a motion for trustees' attorney fees and costs is provided in Minn. Stat. § 501C.0709, as supplemented by the common law under Minn. Stat. § 501C.0106, the district court erred in applying Minn. Stat. § 501C.1004.
Affirmed in part, reversed in part, and remanded.

We use first names or nicknames for certain Lund family members for clarity and for consistency with the district court and parties' usage.

Kim asserted statutory claims under Minn. Stat. § 302A.751 against corporate appellants Lunds, Inc. and LFHI, and under Minn. Stat. § 322B.833 against limited liability company LREH. The 2014 versions of the Minnesota Business Corporation Act (MBCA), Minn. Stat. §§ 302A.001 -.92 (2014), and the Minnesota Limited Liability Company Act (MLLCA), Minn. Stat. §§ 322B.01 -.975 (2014), were in effect at the time this action was initiated. The MLLCA has been repealed and replaced by the Minnesota Revised Uniform Limited Liability Company Act. 2014 Minn. Laws ch. 157, art. 1, at 122-85. No party argues that the new act applies. See Minn. Stat. § 322C.1204 (2018) (providing staggered effective dates for application of the new act).

Kim and Tres are cotrustees of Kim's "Russ Jr." trusts, and Tres and Rein are cotrustees of her "Canadian Oil" trusts and "Qualified Marital Trust." Kim is the sole trustee of her revocable trust, which holds 25% of LREH, 16% of Lunds, Inc., and 7.836% of LFHI.

The district court ruled that Kim has standing to pursue a buy-out. Appellants do not challenge this ruling on appeal.

The district court excluded shares of LFHI held in the Qualified Marital Trust (QMT) for Kim's benefit because the QMT is subject to unresolved estate-tax liability. No party challenges this ruling on appeal.

Because the language of Minn. Stat. § 302A.751 is substantially similar to Minn. Stat. § 322B.833, in our analysis below, we refer collectively to these provisions as Minn. Stat. § 302A.751. See Stone v. Jetmar Props., LLC , 733 N.W.2d 480, 486 (Minn. App. 2007) (explaining that caselaw interpreting chapter 302A can be applied to interpret similar provisions under chapter 322B).